OR. & CAL. R. R. CO. *v.* CITY OF PORTLAND.

[ S. C. 22 L. R. A. 713; 35 Pac. 452.]

| 25 | 229 |
| 38 | 408 |
| 38 | 423 |
| 38 | 429 |

1.  MUNICIPAL CORPORATIONS — STREET IMPROVEMENTS — ASSESSMENT OF BENEFITS — DISCRETION OF COUNCIL — INJUNCTION.— Where the measure of assessments for street improvements in a city is limited to the amount of benefits derived, and the common council is invested with a discretion in determining that amount, (East Portland Charter, [ Laws 1885, pp. 316, 320], article VI., §§ 5, 18 ), the courts will not review the determination of the council, so long as its discretion is honestly exercised and not abused.

2.  LOCAL IMPROVEMENTS — ASSESSMENT ON PROPERTY NOT BENEFITED — DUE PROCESS OF LAW.— The enforcement of an assessment for local improvements upon property not at all benefited thereby is the taking of property without due process of law.

APPEAL from Multnomah:   MICHAEL G. MUNLY, Judge.

This is a suit originally brought by the Oregon & California Railroad Co. and the Southern Pacific Co. against the City of East Portland, its officers and employés, to restrain it and them from building elevated roadways on G and H Streets, adjoining plaintiffs' prop-

erty, and to enjoin the collection of the assessment therefor.  A temporary injunction was granted, restraining the construction of the roadways and the collection of the assessment, which was subsequently modified by permitting the defendants to build the roadways upon giving a sufficient bond, conditioned that said structures would be removed if it should be decreed that they were improperly built, or that the proceedings of the city council were insufficient to authorize their construction. After the consolidation of East Portland and Portland, the latter city was, by order of the court, substituted for the other defendants.  The plaintiffs protested against the improvements when they were contemplated by the council, and, as soon as they were commenced, began this suit, but the defendants gave the required bond and proceeded with the work.  The complaint sets out the alleged errors of the city council which it is claimed rendered its proceedings void, and, the defendants having denied all its material allegations, the cause was referred to H. H. Northup, Esq., to take the testimony and report his findings of fact and conclusions of law thereon.  The referee, after taking the testimony, made among others the following findings of fact:  "(2) The said improvements of G and H Streets are of no benefit to the property of the plaintiffs, described in finding of fact number six, in its present condition, nor are said improvements of any benefit to said property when used for the purposes for which it was purchased and intended, towit: yard and depot purposes."  The court, at the trial, approved said finding, and rendered a decree perpetually enjoining the collection of the assessment, from which the defendants appeal, and now contend that the assessment of benefits was a matter within the discretion of the city council, which the courts cannot review.                    Affirmed.

*Messrs. Jarvis V. Beach,* City Attorney, and *Henry E. McGinn* ( *Messrs. Alfred F. Sears* and *Nathan D. Simon* on the brief), for Appellants.

The legislature has prescribed what is known as the frontage rule in making assessments to pay for the improvements of streets, granting to the council however the right to reduce the assessment if it determines that the abutting property would not be benefited in the full cost of making such improvement; the council not only did not determine that the abutting property would not be benefited in an amount equal to the cost of the improvement in front of it, but expressly determined and enacted in the ordinances providing for these improvements, which are in evidence in this case, that said property would be benefited in the full cost of making the improvement in front of it, so that both the legislature and the common council have passed upon the question, and their decision in the matter is conclusive, unless the physical condition of the property is such as to render it impossible for it to derive benefit from the improvement: *Paulson* v. *Portland,* 1 L. R. A. 673, 16 Or. 458; Cooley, Taxation, 661, *et seq.;* Am. & Eng. Enc. Law, p. 301, and cases there cited.

The finding of the referee on this point is to the effect that the improvement is of no benefit to the property as long as it is used for the purpose for which it was purchased, viz., making up trains, switching, and the like, but can an abutting owner relieve himself from an assessment of this kind by testifying that he purchased the property for a particular use, and that the improvement is no advantage to him or to the property so long as he makes such use of the property?   A statement of such a proposition of law is enough to refute it:  Cooley, Taxation, 663, 664; Elliot, Roads and Streets, 403, 441.

The referee has found that these streets do not extend any farther west than Water Street, and the land west of these points being tide or overflowed lands. If there are no streets there, no property can be assessed for the improvement, but what right have plaintiffs to complain? If complainants owned the adjoining property they could not prevail in this suit upon the ground that there was no street laid out there, without tendering the amount of the assessment upon the remaining portion of their property: *Mills* v. *Charleton*, 26 Wis. 418, 9 Am. Rep. 578; *Evans* v. *Sharp*, 29 Wis. 564; *Evansville* v. *Pfisterer*, 34 Ind. 36, 7 Am. Rep. 214; *Meggett* v. *Eau Claire*, 81 Wis. 326; *Barker* v. *Omaha*, 16 Neb. 269; *Cook* v. *Racine*, 49 Wis. 244.

*Mr. Albert H. Tanner* ( *Messrs. John H.* and *Hiram E. Mitchell* on the brief), for Respondents.

The power conferred upon municipal corporations to improve streets and assess the cost thereof upon adjacent property is a special and limited power, and can only be exercised by a strict observance of every requirement of the act conferring it: *Hawthorne* v. *East Portland*, 13 Or. 271; *Northern Pacific Terminal Co.* v. *Portland*, 14 Or. 27; *Strode* v. *Washer*, 17 Or. 53; *Van Sant* v. *Portland*, 6 Or. 395.

Under the provisions of the charter of the city of East Portland, property is only liable for the cost of the improvement, or any part thereof, when it is benefited by such improvement, to the extent of such assessment: Session Laws of 1885, article VI. §§ 5, 18, pp. 316, 320. The benefits to be conferred must be special benefits and advantages to the property in addition to those received by the community at large: *Chamberlain* v. *Cleveland*, 34 Ohio St. 551; *State* v. *Elizabeth*, 37 N. J. L.

330; *Hammet* v. *Philadelphia*, 65 Pa. 146, 3 Am. Rep. 615; *Paulson* v. *Portland*, 1 L. R. A. 673, 16 Or. 450; *Nichols* v. *Bridgeport*, 23 Conn. 189, 60 Am. Dec. 636; *State* v. *Jersey City*, 36 N. J. L. 56; *New York & N. H. R. Co.* v. *New Haven*, 42 Conn. 279, 19 Am. Rep. 534; *Philadelphia* v. *Philadelphia, W. & B. R. Co.* 33 Pa. 41; *Bridgeport* v. *New York & N. H. R. Co.* 36 Conn. 255, 4 Am. Rep. 63; Dillon, Mun. Corp. § 761; *St. Louis* v. *Allen*, 53 Mo. 44.

Where property is shown to be so situated with reference to the improvement that there cannot possibly be any actual or present benefit thereto, the finding and declaration of the council that the property is benefited is a legal fraud upon the property owner, which courts of equity will set aside as oppressive and in violation of the constitutional rights of such owner:    *Paulson* v. *Portland* and *Chamberlain* v. *Cleveland, supra; Tide Water Co.* v *Coster*, 18 N. J. Eq. 518, 90 Am. Dec. 634; *Re Canal Street*, 11 Wend. 154; *State* v. *Jersey City, supra;* Cooley, Taxation, pp. 619, 641, 661, 662; *Soady* v. *Wilson*, 3 Ad. & El. 248; *Hanscom* v. *Omaha*, 11 Neb. 37; *Brown* v. *Denver*, 3 Colo. 169; *Johnson* v. *Milwaukee*, 40 Wis. 315; *Crawford* v. *People*, 82 Ill. 557; *Creighton* v. *Manson*, 27 Cal. 614 at 625; *Zoeller* v. *Kellogg*, 4 Mo. App. 163; *People* v. *Brooklyn*, 23 Barb. 166; *Re New York Prot. Episcopal Public School*, 75 N. Y. 324; *Allen* v. *Drew*, 44 Vt. 174; *Louisville* v. *Louisville Roller Mill Co.* 3 Bush. 416, 96 Am. Dec. 243; Elliott, Roads & Streets, p. 410; *Mulligan* v. *Smith*, 59 Cal. 206; *Junction R. Co.* v. *Philadelphia*, 88 Pa. 424; *New York & H. R. Co.* v. *Morrisania Trustees*, 7 Hun, 652.

Property acquired under legislative authority and held for railroad purposes exclusively, including road bed, right of way, depots, and station grounds, are held for public use, and are treated by law on grounds of public policy as an entire thing, not legally subject to coercive severance or dislocation, except by some act of

the legislature expressly authorizing it. Hence such property is not subject to assessment for local improvements resulting in a specific lien upon specific parts or portions of such property, and the consequent sale thereof in the same manner as upon execution, as provided by the city charter of East Portland, unless expressly authorized by legislative enactment: *Applegate* v. *Ernst*, 3 Bush. 648, 96 Am. Dec. 272; *Graham* v. *Mount Sterling Coal Road Co.* 14 Bush. 425, 29 Am. Rep. 412; *Knapp* v. *St. Louis, K. C. & N. R. Co.* 74 Mo. 374; *Junction R. Co.* v. *Philadelphia & New York & N. H. R. Co.* v. *New Haven, supra; New York & H. R. Co.* v. *Morrisania Trustees, supra; Philadelphia* v. *Philadelphia, W. & B. R. Co.* 33 Pa. 41; *Ambercrombie* v. *Ely*, 60 Mo. 23; *Dunn* v. *North Missouri R. Co.* 24 Mo. 493; *Portland Lumbering & Mfg. Co.* v. *School Dist. No. 1*, 13 Or. 283; *Leonard* v. *Brooklyn*, 71 N. Y. 498, 27 Am. Rep. 80; Phillipps, Mechanics' Liens, § 180; *Parke County Comrs.* v. *O'Connor*, 86 Ind. 536; *State* v. *Jersey City*, 36, N. J. L. 56; *Foster* v. *Fowler*, 60 Pa. 27; *Wilkinson* v. *Hoffman*, 61 Wis. 637; *Girard Point Storage Co.* v. *Southwark Foundry Co.* 105 Pa. 248; *Tylee Tap. R. Co.* v. *Driscol*, 52 Tex. 13; *McPheeters* v. *Merrimac Bridge Co.* 28 Mo. 465; *Schulenburg* v. *Memphis, C. & N. W. R. Co.* 67 Mo. 442; *Skrainka* v. *Rohan*, 18 Mo. App. 340; *Dano* v. *Mississippi, O. & R. R. R. Co.* 27 Ark. 564; *Cox* v. *Western Pac. R. Co.* 44 Cal. 18; *Buncombe County Comrs.* v. *Tommey*, 115 U. S. 122, 29 L. Ed. 305; 2 Jones, Liens, §§ 1618, 1619.

Assessments made upon the property of the plaintiffs as to the benefits received, without notice and an opportunity to be heard upon that question, if deemed final and conclusive, would be unconstitutional as depriving them of property "without due process of law": *State* v. *Paterson*, 41 N. J. L. 83; *Mulligan* v. *Smith*, 59 Cal. 206; *Weimer* v. *Bunbury*, 30 Mich. 201; *Thomas* v. *Gain*, 35 Mich. 154, 24 Am. Rep. 535; *Stuart* v. *Palmer*, 74 N. Y. 183, 30 Am.

Rep. 289; Cooley, Taxation, p. 266; *San Mateo County* v. *Southern Pac. R. Co.* 13 Fed. Rep. 145; *Seifert* v. *Brooks,* 34 Wis. 443; *Langford* v. *Ramsey County Comrs.* 16 Minn. 375.

But if the matter of assessments of benefits is left subject to review by the courts, and the decision of the council is not deemed to be final and conclusive, then it is submitted that the property owner is not denied the right to be heard in reference to the assessment of such benefits, and the constitutional guaranty referred to is not violated: *Davidson* v. *New Orleans,* 96 U. S. 104, 24 L. Ed. 619; *Hagar* v. *Reclamation District No. 108,* 111 U. S. 701, 28 L. Ed. 569; *Scott* v. *Toledo,* 1 L. R. A. 688, 36 Fed. Rep. 385; *Gilmore* v. *Hentig,* 33 Kan. 156; Cooley, Taxation, 2d Ed. p. 636; *Wilson* v. *Salem,* 24 Or. 504; *Paulson* v. *Portland,* 149 U. S. 30, 37 L. Ed. 637.

Opinion by MR. JUSTICE MOORE.

The streets of the city having been dedicated by the proprietor to the public, the state, by its legislative assembly, may determine the necessity for, and character of, any improvement thereto, and what property will be benefited thereby; and whatever power the legislature possesses over the streets of a city it may delegate to corporate authorities to be exercised in the mode and to the extent prescribed in the act conferring such power. This delegation of power invests the municipal corporation with all the discretion the legislature possessed, and hence it follows that the common council, as agent of the corporation, is clothed with exclusive discretion in determining the necessity for, and character of, all street improvements, and what property will be benefited thereby, and the amount of benefits conferred. These are questions of policy with which the legislature and its

creature, the municipal corporation, deals, and the courts have no right to interfere except in case of fraud or oppression, or some wrong constituting a plain abuse of such discretion: Elliott on Roads and Streets, 375; Cooley on Taxation, 661. It is impossible for a council to fix with mathematical accuracy the amount of benefits that will inure to property in consequence of a local improvement, but if it appear that it has exercised an honest discretion in determining this question of policy, however much it may have erred in judgment, the remedy is at the polls in choosing a new council, and not by reviewing its proceedings in the courts. If the courts were invested with authority to review these questions of policy, but few assessments could ever be collected without an action, and the adjudication of purely legislative questions would be substituted for the discretion of a city council. The only recognized exceptions to this rule are to be found in those cases in which, under pretense of apportionment, a work of general benefit has been treated as one of merely local consequence, and the cost imposed on some local community in disregard of the general rules which control legislation in matters of taxation: Cooley on Taxation, 450. The presumption is that the council has done its duty, but this presumption may be overcome by facts showing that the rule prescribed for the apportionment, or the assessment made under it, is so grossly and palpably unjust and oppressive as to give demonstration that the proper authority had never determined the case on the principle of taxation: Cooley on Taxation, 662; Elliott on Roads and Streets, 410.

1.  Section 5, article VI., of the charter of East Portland (Session Laws, 1885, page 316,) under which the assessment was made, provides that "The council may proceed to ascertain and determine the probable cost of making such improvement, and assess upon each lot or

part thereof liable therefor, its proportionate share of
such cost, and if the council shall adjudge that any
such lot or part of lot would not be benefited by the im-
provement in the full sum of the cost of making the
same upon the half of the street abutting upon such lot
or part of lot, the council shall assess upon such lot or
part of lot, as its proportionate share thereof, such sum
only as it shall find the lot to be benefited by such im-
provement."   And section 18 of the same article provides
that "Each lot or part thereof, within the limits of a pro-
posed street improvement, shall be liable for the full cost
of making the same upon the half of the street in front
of and abutting upon it, and also a proportionate share
of the cost of improving the intersection of two of the
streets bounding the block in which said lot or part
thereof is situated, unless the council shall have deter-
mined that such lot or part thereof will not be benefited
by such improvement in the full sum of such cost, in
which case such lot or part thereof shall be liable for so
much of said cost only as the council shall have found
the same to be benefited thereby; and the further cost of
making said improvement in excess of the benefits so
found shall be paid from the general fund of the city."
These sections of the charter clearly provide that the
measure of the assessment is limited to the amount of
benefits derived, and invest the council with a discretion
in determining that amount; and so long as this discre-
tion is not abused, the courts are powerless to review its
action in a collateral proceeding.   THAYER, J., in speak-
ing of the discretion of a common council in assessing
benefits, said:   "It exercises such authority as agent of
the state, and for the public good; and so long as it
keeps within the scope of its power the courts have no
control over it, nor jurisdiction in a collateral proceeding
to question its acts.   If it were to assess property for the

cost of constructing a sewer, so laid as to render it physically impossible to benefit the property, as in the case of *Hanscom* v. *City of Omaha*, 11 Neb. 37, 7 N. W. 739, it would exceed its authority, and it would be the duty of the courts to interfere, and prevent the wrong from working injury; but where the property is directly benefited by the prosecution of such an enterprise, and the common council has assessed what it deems a proportionate share of the cost upon the owner thereof, the courts are not authorized to institute an inquiry in order to ascertain whether or not the assessment exceeds the benefits": *Paulson* v. *Portland*, 16 Or. 450, 1 L. R. A. 673, 19 Pac. 450. This is practically holding that if property had received any benefit from a local improvement, courts would not measure the amount, but if it were so situated that it could not possibly receive any benefit therefrom, they would interfere to prevent the wrong.

2. The referee who took the testimony found that the property was so situated that it had received no benefit from the improvement, and the court gave this finding its unqualified approval in the following expressive language: "The evidence shows that these elevated roadways led from Second Street to the river, where there is no wharf, warehouse, ferry, or landing, or other improvement; that it has not been traveled or used as a thoroughfare, or, in fact, for any purpose except for the storage of iron and materials; that there is no likelihood that it will ever be used as a traveled street; that it has not served any other cognate purpose; that it is an actual detriment to the property of the plaintiffs for the purpose for which it was purchased, to wit: yard and depot purposes. It appears also in the ninth and tenth findings of fact of the referee's report that the city built these elevated roadways beyond the west end of the streets over private property, ninety-five feet from the west end

of G Street, and one hundred and thirty-nine feet from the west end of H Street, and attempted to assess the costs upon the plaintiff's property. The alleged improvements would appear to be a foolish and wholly uncalled for undertaking, which served neither the public nor the property holders in this instance; and the attempt to charge the property of the plaintiffs with the costs thereof is, to use the words of a famous jurist in a similar instance, 'so plainly, palpably, rankly, and ruinously unjust that it must be pronounced no proper or lawful mode of taxation, but an injustice so gross as to be void against the rights of property as protected by a bill of rights.'" The court and referee, from their knowledge of the premises, and of the character of the improvement, were well qualified to make these findings, which a careful examination of the record shows were fully warranted by the evidence. "The court," says Judge Elliott, "will interfere with reluctance, and only in clear cases, but they will not abdicate all power of review and supervision. They will not substitute their judgment for that of the local officers, but they will not permit those officers to so abuse their discretion as to do great injustice to the citizen": Elliott on Roads and Streets, 411. "We have no doubt," said the court in *Allen* v. *Drew*, 44 Vt. 174, "that a local assessment may so far transcend the limits of equality and reason that its exaction would cease to be a tax, or contribution to a common burden, and become extortion and confiscation. In that case it would be the duty of the court to protect the citizen from robbery under color of a better name." The court having found that there was no necessity for the improvement; that the elevated roadway as built had not been, and probably never would be, used; that the improvements were of no benefit but an actual damage to plaintiffs' property, and these conclusions being amply supported by

the evidence, we feel bound thereby. The record shows that these roadways are from fifteen to thirty feet above the surface of plaintiffs' property, extending from Second Street on G and H Streets into the Willamette River, a distance of about three blocks, and can only be approached from Second Street; that they do not connect with any wharf, bridge, ferry, or landing, and, as the court substantially finds, stand out in the river as monuments of folly; that, though they have been built about two years in a populous city, teeming with life and business energy, they have only been used in a few instances by teamsters hauling away some iron pipes which had been landed thereon from the river. There could not have been much, if any, public necessity for these structures, if their actual use is to be taken as an indication of their utility. They have not been used by the public nor by the plaintiffs, and, as the court finds, probably never will be, and yet it is sought to collect the cost of their construction from the plaintiffs upon the theory of benefits concerned. Courts rightfully hesitate to review the discretion of a city council, and consider it a delicate question, and yet there are cases in which the exercise of the power of assessment becomes such a flagrant abuse that they must interfere to prevent the confiscation of property. In this case it clearly appears that the property of the plaintiffs was in no way benefited by the alleged improvement, and hence there was no foundation for the exercise of discretion on the part of the council in the assessment of such property for its cost, or any part thereof. Under such circumstances the enforcement of the assessment would be "taking property without due process of law," and the decree must therefore be affirmed.                                    Affirmed.