ATLANTIC COAST LINE RAILROAD COMPANY, A CORPORATION, *Appellant*, v. CITY OF GAINESVILLE, *Appellee*.

Opinion Filed February 22, 1922.

1.  A city may charge a railroad's property that abuts, fronts or borders on the side of a street with its proportionate part of the expense of paving the street upon which such property abuts, fronts or borders.

2.  Where a railroad whose tracks run longitudinally through the center of a street, has been assessed the cost of paving between the rails of its track and for two feet on either side, it cannot be further assessed for a proportionate part of the residue of the cost of paving the street.

3.  The theory of special assessments for improvements is based upon the doctrine that the property against which the assessment is levied, derives some special benefit from the local improvement. In the matter of street paving, it is presumed or assumed that all property abutting on a street to be improved will be benefitted, and upon that theory such special assessments are permitted without having to establish that the property will be benefitted.

4.  Assessments for street improvements are upheld on the ground that the adjacent property upon which the cost of the improvement is assessed is enhanced in value to an equal amount to the sum assessed against it, and that the owners have received a peculiar benefit which the citizens do not share in common.

5.  Whether the owners of property *abutting on a street* will or will not be benefitted by street improvements, is a legislative and not a judicial question.

6.  Where there has been an arbitrary and unwarranted exercise of the legislative power to declare that certain property will necessarily be benefitted by street improvements, or where there has been some denial of the equal protection

of the laws in the method of evercising it, the courts are open to protect the constitutional rights of land owners from arbitrary and wholly unwarranted legislative action.

An Appeal from the Circuit Court for Alachua County; J. T. Wills, Judge.

Decree reversed.

*R. A. Burford* and *W. E. Kay,* for Appellant;

*Robert E. Davis,* for Appellee.

BROWNE, C. J.—The City of Gainesville, acting under the provisions of an amendment to its charter approved June 6, 1911, sought to impose upon the Atlantic Coast Line Railroad Company, whose tracks extend longitudinally along a part of West Main Street in that city, the burden of paying all the cost of paving between its rails and for two feet on each side thereof, and also a proportionate amount of the remaining cost of the paving. The railroad company voluntarily paid the cost of paving between the rails of its track and for two feet on each side thereof, amounting to over $8,800.00, but refused to pay the special assessment of $19,624.61 as a proportionate part of the remaining cost.

The city thereupon sought to enforce the payment of the $19,624.61, with interest and attorney's fees, by bill in equity.

A demurrer, setting up several defenses, among which is the unconstitutionality of the act of the legislature amending the charter of the City of Gainesville in 1911, was overruled. The defendant then filed its answer, por-

tions of which were stricken on motion of the complainant. The cause was heard on an agreed statement of facts.

A final decree in favor of the complainant was entered, from which, and the orders overruling the demurrer to the bill and sustaining exceptions to certain portions of the answers, an appeal was taken to this court.

The appellant contends that the amendment to the City Charter, and the ordinance enacted under it, whereby it is sought to charge the railroad company with a proportionate part of the expense of paving West Main Street in addition to the cost of paving between the rails of its tracks and for two feet on each side thereof, are violative of Section 12 of the Declaration of Rights of the Florida Constitution, and of Section 1 of the Fourteenth Amendment to the Constitution of the United States, in that it seeks to deprive the defendant of its property without due process of law, and denies to the defendant the equal protection of the laws, and as against the appellant such acts are unconstitutional and void.

If the assignments of error raising these questions are upheld, it would be idle to discuss the other questions presented, as there is no use lopping off branches, when it is necessary to destroy the tree at its root

The amendment to the charter of the City of Gainesville approved June 6, 1911, from which the city seeks to derive authority for charging the Atlantic Coast Line Railroad with one-third of the cost of the pavement in addition to the cost of paving between its tracks and for two feet on each side thereof, is as follows: "Every railroad crossing any street shall be required to pay the costs of paving between the rails of each of its tracks and two feet on each side thereof, and where any railroad track or tracks

are extended or laid along or side of any street, such tracks shall, for the purposes of this act, be held and treated as property fronting or abutting upon said street; and where any railroad track or tracks are extended or laid longitudinally along any portion of any street, between and within the boundaries thereof, such tracks shall, for the purposes of this section, be held and treated as property fronting or abutting upon the said street, and entitled to be assessed for such proportion of the costs of grading, paving, or improving said street on each side of such railroad track or tracks as any other property fronting or abutting upon said street, without regard to the character of ownership, title, or possession of the owner or owners of said railroad tracks in the soil upon which the same is laid and constructed.''

In 1912 the City of Gainesville adopted an ordinance providing for the paving of certain parts of West Main street, over which the main line of the Atlantic Coast Line Railroad runs longitulinally in about the center of the street, for the entire distance of the paving.

It also provided: ''In making the assessment of the cost of said paving the Atlantic Coast Line Railroad Company, a corporation using and occupying a railroad track and right-of-way along the middle of said street, shall pay the cost of the paving between the rails of its said track and for a distance of two feet on each side thereof, and shall also be assessed as the owner of property fronting or abutting upon each side of said street in the same proportion as other property abutting or fronting upon said street shall be assessed for the cost of such work.''

The question here presented does not embrace the right of a city to charge a railroad's right-of-way that abuts, or borders on a street, with its proportionate part of the

expense of paving the street upon which the right-of-way fronts, abuts or borders. Such a right seems well established. Peru and Indianapolis R. R. Co. v. Hanna, 68 Ind. 562; Indianapolis & V. Ry. Co. v. Capitol Pav. & Const. Co., 24 Ind. App. 114, 54 N. E. Rep. 1076; Patterson & H. R. R. Co. v. City of Passaic, 54 N. J. L. 340, 23 Atl. Rep. 945; Northern Pac. R. Co. v. City of Seattle, 46 Wash. 674, 91 Pac. Rep. 244. This is questioned in some jurisdictions. Chicago, M. & St. P. Ry. Co. v. City of Milwaukee, 89 Wis. 506, 62 N. W. Rep. 417.

In Northern Pac. R. Co. v. City of Seattle, *supra*, which is relied on strongly by the appellee, the railroad company had an abutting right-of-way varying from 60 to 100 feet in width, with a single track located on the side adjacent to the street. This property like any other property situated on the side of the street and abutting thereon, would unquestionably be subject to the paving assessment, but it was urged that as it had been granted to the railroad as a right-of-way, it was not subject to be so assessed. The court said: "Except for appellant's occupancy, no suggestion would be made that the land was not benefited by the improvement, or that it would not be subject to the assessment. The particular use of the land cannot affect its liability to assessment. Abutting property cannot be relieved from the burden of a street assessment simply because its owner has seen fit to devote it to a use which may not be specially benefitted by the local improvement. The benefit is presumed to inure, not to such present use, but to the property itself, affecting its value."

After this decision the City of Seattle sought to impose a part of the expense for street improvements upon a street-car company whose tracks extended longitudinally along the street, and the case of Northern Pac. R. Co. v.

City of Seattle, *supra,* was relied on as authority. The Supreme Court of Washington in deciding adversely to the city's contention said: "The case of Northern Pacific Railway Company v. Seattle (Wash.), 91 Pac. 244, is not in point here. The right-of-way in that case abutted upon the street. It was no part of the street itself, and was not an additional burden upon the street. The right-of-way and track was also the private property of the railroad company in the sense that the company alone had the use of and control over it, while in this case the general public still have the use and do use the entire street. The right-of-way in that case was perpetual, while here it is for only a limited time. The land in that case was to all intents and purposes the railway company's property, while here the fee, as well as the right of control, belong to others. Other differences between the cases will readily occur to the mind, but these are sufficient to show the want of similarity between them." City of Seattle v. Seattle Electric Co., 48 Wash. 599, 94 Pac. Rep. 194.

The authorities hold that with great unanimity that where a railroad track runs longitudinally through the center of the street, it is not subject to special assessments of paving improvements on such street. Chicago, M. & St. P. Ry. Co. v. City of Milwaukee, 89 Wis. 506, 62 N. W. Rep. 417; City of Allegheny v. Western Pa. R. Co., 138 Pa. St. 375, 21 Atl. Rep. 763; Louisville & N. R. Co. v. City of East St. Louis, 134 Ill. 656, 25 N. E. Rep. 962; City of Seattle v. Seattle Electric Co., 48 Wash. 599, 94 Pac. Rep. 194; Kansas City Southern Ry. Co. v. Road Improvement Dist. No. 6 of Little River County, Ark., 256 U. S. 658, 41 Sup. Ct. Rep. 604; Indianapolis & V. Ry. Co. v Capitol Pav. & Const. Co., 24 Ind. App. 114, 54 N. E. Rep. 1076.

We fail to find a case where a railroad whose tracks run longitudinally through the center of a street, and has been assessed and paid the cost of paving between the rails of its track and for two feet on either side, has been further assessed for a proportionate part of the residue of the cost of paving the street.

In the case of South Park Commissioners v. Chicago, B. & Q. R. R. Co., 107 Ill. 105, the court said: "It is apparent from the foregoing statement, the only question presented for determination is, whether '*the right-of-way* of occupancy, franchises, property and interests of' the appellee, in Michigan Avenue, are, within the meaning of the acts above cited, '*contiguous property abutting* upon such avenue,' for no other description of property is authorized to be assessed. It does seem to us the very statement of this question furnishes its own solution. It is clear that nothing but some tangible object or thing can, with propriety, be said to abut on a street or avenue, and it is not pretended the subject of assessment in this case is anything of the kind. If the interests or rights assessed can be said to have any corporal or physical existence, so that they could, with any propriety of language, be said to be contiguous to or abutting upon anything, they must be represented by the avenue itself, and, as is well said by the Appellate Court, it would be a legal solecism to say the avenue was contiguous to and abutted on itself."

It is the contention of the city that even if it was without previous authority to assess the railroad company for a proportionate part of the cost of paving West Main Street, in excess of the cost of paving between the rails of its tracks and for two feet on each side thereof, the amendment to its charter by the Legislature of 1911, gave it full power so to do.

This presents the question of the power of the legisla-ture to apply a rule of taxation, the only basis for which is the existence of certain physical conditions, to property not in the same physical condition or situation. In other words, to declare a thing to be so that in fact is not so.

Counsel for appellee seeks to meet this question in this way: "In the Volstead Act, intoxicating liquor is defined to be, any liquor containing alcohol in excess of ½ of 1 per cent., when it is known by the experience of mankind that liquors of an alcoholic content far greater than the percentage mentioned are not intoxicating. But the right of Congress to fix the quantity of alcohol as declared by the Volstead Act has been sustained by the U. S. S. C., in the case of Rhode Island v. Palmer, 253 U. S. 250, 64 L. Ed. 946.

"Again, Congress has declared that certain birds are migratory, viz: turtle doves, field larks, cat birds, martins, bull-bats, swallows, thrushes, wipporwills, woodpeckers and wrens, when it is a matter of common knowledge of all of us who have had the hunting instinct well developed and have been observers of wild life, that, all these men-tioned mate and raise their young from year to year in many instances upon the same section, if not the same forty acre tract, and that Act has received the sanction of the Supreme Court of the United States in the case of Missouri v. Holland, 252 U. S. 416, 64 L. Ed. 641."

With regard to the Migratory Bird Act, this question was not before the court and was not passed on.

As to the Volstead Act, the decision of the Supreme Court of the United States in sustaining its constitution-ality is conclusive only on the subject of beverages, and as to such the Volstead Act and the decision of the Supreme

Court of the United States sustaining that feature of it, are responsive to the demand of "the prevailing public morality, or strong and preponderant opinion." Noble State Bank v. Haskell, 219 U. S. 104, 31 Sup. Ct. Rep. 186. It is not authority for the proposition that legislative bodies have power with regard to all physical facts, to declare a thing to be so which is not so. Another authority counsel might have cited, but did not, is that of the Monk Gorenflot, who at the instance of Chicot the Jester solemnly christened a chicken a carp, in order that he might partake of it on Friday without violating his religious obligations.

It may be contended that the amendment to the charter did not declare a railroad track to be abutting property but only that it should be assessed as abutting property. That seems to be a distinction without a difference, but assuming there is a difference let us see where it will lead.

If the legislature may empower a city to assess any property within the city for the cost of a street improvement without regard to whether the property actually abuts on the street or not, by merely empowering it to assess it "as property abutting on the street," then the legislature could authorize a city to levy a special assessment on property abutting on other streets than the one improved. Perhaps this may be done, but if property other than that actually abutting on the improved street is assessed for such improvemens the presumption of benefit from the improvements which attaches to land abutting on the street vanishes, as such an assessment could only be upheld by showing that the property derived actual benefit from the improvements.

The whole theory of special assessments for improvements is based upon the doctrine that the property against

which the assessment is levied, derives some special benefit from the local improvement. In the matter of street paving, it is presumed or assumed that all property abutting on a street to be improved will, or may be benefited, and upon that theory such special assessments are permitted without having to establish that the property will be bene-fitted. Northern Pac. R. Co. v. City of Seattle, 46 Wash. 674, 91 Pac. Rep. 244; Louisville & N. R. Co. v. Barber Asphalt Pav. Co., 197 U. S. 430, 25 Sup. Ct. Rep. 466.

A further presentation of the authorities on this subject is illuminative.

Local assessments ''are charges assessed against the prop-erty of some particular locality because that property derives some special benefit from the expenditure of the money collected by the assessment in addition to the general benefit accruing to all property or citizens of the commonwealth.'' Elliot on Railroads, p. 188.

''The theory underlying the doctrine of local assessments of the first type, which is held by the great majority of the courts is that the value of certain property is enhanced by an improvement of a public character, the property thus receiving an especial and peculiar benefit; and that upon such property a part or the whole of the cost of such public improvement is assessed to an amount not exceeding the amount of such benefits. The owner of the property is therefore under this theory no poorer by reason of the entire transaction, as the assessment only takes from him the equivalent of part or all of the special benefit which the public improvement has conferred upon him; or to state it in another way, the special benefits conferred on him by the public improvement compensate him or more than compensate him for the amount of the assessment which

he is obliged to pay.'' Page & Jones, Taxation by Assessment, Sec. 11. See authorities cited.

''Paving a street which has already been acquired for the use of the public is an improvement for which local assessments may be levied, since it facilitates public travel upon such street, makes it easier, pleasanter and more economical, and gives better access to the adjoining and abutting property, and accordingly it confers both a general benefit to the public at large and a special benefit to the adjoining and abutting property owner.'' Ibid, Sec. 314.

''Assessments for street improvements are upheld on the ground that the adjacent property upon which the cost of the improvement is assessed is enhanced in value to an amount equal to the sum assessed against it, and that the owners have received a peculiar benefit which the citizens do not share in common.'' Quill v. City of Indianapolis 124 Ind. 292, text 299, 300, 23 N. E. Rep. 788, 7 L. R. A. 681.

''The true reason that property which is not benefitted in an especial degree should not be assessed is to be found in the very nature of the assessing power. The only right which the legislature possesses by virtue of its power to assess, is to assess property benefitted by a public improvement in proportion to and not exceeding the benefits conferred by such improvement. To use such a power as a justification for a tax levied upon property which is not benefitted by the improvement for which the assessment is levied, would be to attempt to support by the theory of the power of local assessment, an exaction which has none of the elements of the local assessment. Another reason that property not benefitted cannot be assessed is found in the constitutional provisions which forbid the taking of prop-

erty except by due process of law.'' ''Taking under guise
of taxation or of that branch of that power of taxation
known as local assessment, in defiance of the essential ele-
ments of such power, is a taking of property without due
process of law.'' Page & Jones on Taxation by Assess-
ment, Sec. 549. See Oregon & C. R. Co. v. City of Port-
land, 25 Ore. 229, 35 Pac. Rep. 452, 22 L. R. A. 713.

''While the statements found in many of the cases would
seem to imply that the legislature has sole and exclusive
discretion in the determination of this question, it is never-
theless clear that there are some limits to such discretion.
If no such limits exist, the power of local assessment would
be but another name for arbitrary exaction and confisca-
tion. What these limits are is not clearly established. It
may be impossible to state them in accurate and precise
terms. It has been said that the legislature has a wide
range of discretion in determining what property is
especially benefitted and that the courts will interfere only
when it is shown conclusively that the legislature is wrong
in making the determination which it has made. Another
form of stating the restriction which exists upon the power
of the legislature to determine what property is benefitted,
is that the court can ignore such legislative determination
only in a clear case. It is said to be conclusive in any case
admitting of a substantial difference of opinion. Another
form of expressing the same idea is that the question of
benefit to the property owner is not a judicial question
unless the court can plainly see that no benefit can exist
and this absence of benefit is so clear as to admit of no
dispute or controversy by evidence. It has been said that
the determination of the legislature is conclusive except in
extraordinary cases presenting a manifest abuse of legis-
lative authority. If the area which the legislature has

determined to be benefitted by the improvement is so small that the benefits cannot equal the cost, such determination is not conclusive.'' Page & Jones on Taxation by Assessment, Sec. 553, pp. 896, 897.

A special assessment for benefits is a mode of levying upon particular property and charging it with a local burden, with reference to the peculiar and specific benefit to such property by reason of the improvements. When such assessments are levied upon property bordering upon an improved street, it is assumed or presumed that such abutting property receives a peculiar benefit from the improvements that justifies special contributions being paid by the abutting owner in addition to and exclusive of the general tax which he pays as one of the general public. 5 Corpus Juris, 819, and authorities there cited.

That the question of whether the owners of property *abutting on a street* would or would not be benefitted by street improvements, is a legislative and not a judicial question, is well settled. Prior v. Buehler & Cooney Const. Co., 170 Mo. 439, 71 S. W. Rep. 205; Smith v. Worcester, 182 Mass. 232, 65 N. E. Rep. 40; Duncan v. Ramish, 142 Cal. 686, 76 Pac. Rep. 661; Chicago & A. R. Co. v. City of Joliet, 153 Ill. 649, 39 N. E. Rep. 1077; Chicago & N. W. Ry. Co. v. Village of Elmhurst, 165 Ill. 148, 46 N. E. Rep. 437; People *ex rel.* Scott v. Pitt, 169 N. Y. 521, 62 N. E. Rep. 662, 58 L. R. A. 372.

Such special assessments when levied on property that actually abuts on an improved street are sustained by the courts without regard to the question of whether or not a particular piece of property abutting thereon derives any benefit from the improvements, upon the presumption that such property must necessarily be benefitted, and that the benefit it derives from the improvements are peculiar to its

location *as property abutting on the street.* In determining the proportion of the expense for street improvements that each abutting piece of property must bear, the city must adopt a fair and reasonable rule of apportionment, and it has been held, and it is the rule in this State, that what is known as the front foot rule is a fair and reasonable one for distributting the expense of the improvements. Where this rule or some other fair and reasonable one is adopted the act of the city in the exercise of its legislative discretion will not be disturbed by the courts. But where there has been an arbitrary and unwarranted exercise of the legislative power or some denial of the equal protection of the laws in the method of exercising it, the courts are open to protect the constitutional rights of land owners from arbitrary and wholly unwarranted legislative action. That this view is abundantly supported by the decisions of the Supreme Court of the United States, brief extracts from a few will demonstrate.

In Branson v. Bush, 251 U. S. 182, it was said: "The subject was carefully re-examined and the law restated in cases so recent as Wagner v. Baltimore, 239 U. S. 207, and Houck v. Little River Drainage District, 239 U. S. 254, with the result that the rule as we have stated it was approved, with the qualification, which was before implied, that the legislative determination can be assailed under the Fourteenth Amendment only where the legislative action is 'arbitrary and wholly unwarranted,' 'a flagrant abuse, and by reason of its arbitrary character is mere confiscation of particular property.' And see Withnell v. Ruecking Construction Co., 249 U. S. 63, 69; Hancock v. Muskogee, 250 U. S. 454, 457; Embree v. Kansas City Road District, 240 U. S. 242, 250.

"The decisions relied upon by the company, Norwood v.

Baker, 172 U. S. 269; Myles Salt Co. v. Iberia Drainage District, 239 U. S. 478; Gast Realty Co. v. Schneider Granite Co., 240 U. S. 55, are not in conflict with the rule but plainly fall within, and are illustrations of, the qualification of it.''

In Embree v. Kansas City & Liberty Boulevard Road Dist., 240 U. S. 242, 36 Sup. Ct. Rep. 317, it was said: ''A legislative act of this nature can be successfully called in question only when it is so devoid of any reasonable basis as to be essentially arbitrary and an abuse of power (Wagner v. Leser, 239 U. S. 207; Houck v. Little River Drainage District, 239 U. S. 254; Myles Salt Co. v. Iberia Drainage District, 239 U. S. 478; Gast Realty Co. v. Schneider Granite Co., 240 U. S. 55. And see Bi-Metallic Investment Co. v. State Board of Equalization, 239 U. S. 441, 445-446.)''

''We do not mean to say that if in fact it were made to appear that there was an arbitrary and unwarranted exercise of the legislative power, or some denial of the equal protection of the laws in the method of exercising it, judicial relief would not be accorded to parties aggrieved. The facts of this case raise no such question.'' Hancock v. City of Muscogee, 250 U. S. 454, text 457, 39 Sup. Ct. Rep. 528.

''We do not understand this to mean that there may not be cases of such flagrant abuse of legislative power as would warrant the intervention of a court of equity to protect the constitutional right of land owners, because of arbitrary and wholly unwarranted legislative action. The constitutional protection against deprivation of property without due process of law would certainly be available to persons arbitrarily deprived of their private rights by such

state action, whether under the guise of legislative authority or otherwise.'' Wagner, Inc. v. Baltimore City, 239 U. S. 207, text 219, 36 Sup. Ct. Rep. 66.

''But as is implied by Houck v. Little River Drainage District if the law is of such a character that there is no reasonable presumption that substantial justice generally will be done, but the probability is that the parties will be taxed disproportionately to each other and to the benefit conferred, the law connot stand against the complaint of one so taxed in fact.'' · Gast Realty Co. v. Schneider Granite Co., 240 U. S. 55, 36 Sup. Ct. Rep. 254.

The Atlantic Coast Line Railroad's road-bed and tracks not being property *abutting* on West Main Street, the presumption which attaches to abutting property, that by reason of its situation it is necessarily benefitted, does not apply to the railroad's property. Property other than that abutting on an improved street cannot be made to bear a portion of the cost of the improvements of such street, exclusive of the general tax which it pays as part of the general public, unless it is made to appear that it. derives some benefit proportionate to the amount assessed against it.

By the method adopted by the City of Gainesville to pay cost of paving West Main Street, the Atlantic Coast Line Railroad Company was required to pay $8,833.19 for paving between the rails of its tracks and for two feet on each side thereof; one-third of the remainder of the entire cost to be paid by the City of Gainesville from funds derived from the sale of street paving bonds, and two-thirds of. the remaining cost was to be paid by. special assessments against property actually abutting on West Main Street, and by the Atlantic Coast Line Railroad. By this method the railroad was assed for the further sum of

$19,624.61, and the abutting property owners on each side of the street were assessed the same amount. In addition to these assessments the railroad is subject to be taxed in common with the general public to pay its proportion of one-third of the cost paid for by the city from the proceeds of the sale of city bonds. It is thus sought to make the railroad pay in addition to its portion of the general taxes in common with all other property in the City of Gainesville, the sum of $28,457.80 out of a total cost of $67,706.08 for the entire street.

It is a matter of common knowledge that lots in a city approximately the size of Gainesville are seldom less than 75 feet deep, and are frequently more than 200 feet deep, and these lots were assessed for the same amount per front foot as the Atlantic Coast Line Railroad was assessed, for a space about nine feet wide.

It is contended by the appellee that in adopting this method of levying the special assessment against the Atlantic Coast Line Railroad it followed the order of the amendment to its charter as adopted by the legislature of Florida in 1911.

Upon this point the Supreme Court of the United States in the case of Gast Realty & Investment Co. v. Schneider Granite Co., 240 U. S. 55, text 59, 36 Sup. Ct. Rep. 254, said: "It is enough to say that the ordinance following the orders of the charter is bad upon its face as distributting a local tax in grossly unequal proportions not because of special considerations applicable to the parcels taxed but in blind obedience to a rule that requires the result."

Here we find a blind obedience to the rule provided for in the amendment to the charter, which from common knowledge of legislative procedure with regard to the

enactment of local laws was passed by the legislature at the instance of the people or the authorities of the City of Gainesville. This resulted in a local tax being levied in grossly unequal proportions, and it is neither excuse nor defense to invoke the legislative authority.

In the case of Kansas City Southern Ry. Co. v. Road Improvement Dist. No. 6 of Little River County, Ark. 256 U. S.,658, 41 Sup. Ct. Rep. 604, text 605, the court said: "Obviously the railroad companies have not been treated like individual owners, and we think the discrimination so palpable and arbitrary as to amount to a denial of the equal protection of the law. Benefits from local improvements must be estimated upon contiguous property according to some standard which will probably produce approximately correct general results."

The charter provision for levying against the property of the Atlantic Coast Line Railroad a special assessment equal to that levied against abutting owners on either side of the street, in addition to the amount paid by the railroad for paving between the rails of its tracks and for two feet on each side thereof, was "arbitrary and wholly unwarranted," and by reason of its arbitrary character is a mere confiscation of the railroad's property, and is an arbitrary and unwarranted exercise of the legislative power amounting to a denial of the equal protection of the laws, and is therefore unconstitutional and void.

The decree of the chancellor is reversed.

TAYLOR, WHITFIELD, ELLIS AND WEST, J. J., concur.

WHITFIELD, J.—Concurring.

The tracks of the railroad company, by permission granted or acquiesced in, as a right-of-way easement, run longitudinally for nearly a mile along the center of a street of the municipality. By previous regulations acquiesced in, the railroad company paid for paving the street covering the spaces between the rails of the railroad track and also two feet on each side of the rails.

By authority of a statute which purports to authorize for street paving purposes the proportionate assessment of the railroad tracks "as property fronting or abutting upon each side of said street," the municipality by ordinance assessed against the railroad company an amount equal to one-third of the remainder of the cost of the street paving in addition to the entire cost of paving the space between the rails of the railroad track and two feet on each side thereof. The railroad company declined to pay the additional assessment and a decree was rendered against it for an amount to cover the added assessment. On appeal the company invokes the contract, due process and equal protection provisions of the Federal Constitution.

Apparently the railroad tracks do not materially impair the use of the street by the public.

There is nothing to indicate that the railroad company will directly or indirectly derive any benefit or advantage from the additional heavy assessment; and the added burden does not conserve the public safety, health or morals, even if the assessment had been made for that purpose. Benefits to the company's property rights cannot be assumed in view of the facts that appear. No benefits to the company to accrue from the additional burden is alleged.

The right of the defendant company to use the street for its railroad track is, within the limitations imposed by the paramount law for the protection of private rights, subject to the fair burdens resulting from the exercise of the sovereign police and assessment powers of the State, whether exerted directly by statute or indirectly through the medium of duly authorized action by the municipality. The exertion of the police power is subject to applicable limitations contained in the Federal and State Constitutions, that are designed to secure private rights against an arbitrary, unduly oppressive or unjustly discriminating exercise of governmental authority. 5 R. C. L. 195; 19 R. C. L. 802. Where the police power is invoked to conserve the public peace, safety, health or morals, its exercise is not ordinarily controlled by considerations of correlative pecuniary burdens and benefits. When the governmental power is exerted to conserve the mere public convenience, comfort, improvement, progress or economy, its exercise should have some fair relation to mutual compensations or correlative property burdens and benefits; and when the power is exerted through legislative action, presumptions of its proper exercise may be indulged by the courts in the absence of facts and circumstances that repel presumptions. See Atlantic Coast Line R. Co. v. City of Goldsboro, North Carolina, 232 U. S. 548, 34 Sup. Ct. Rep. 364; State v. Jacksonville St. R. Co., 29 Fla. 590, 10 South. Rep. 590; Great Northern R. Co. v. Minnesota ex rel. Clara City, 246 U. S. 434, 62 L. Ed. 817, 38 Sup. Ct. Rep. 346; Northern P. R. Co. v. State of Minnesota ex rel. City of Duluth, 208 U. S. 583, 28 Sup. Ct. Rep. 341; Pacific Gas & E. Co. v. Police Court, 251 U. S. 22, 64 L. Ed. 112, 40 Sup. Ct. Rep. 79; Oklahoma R. Co. v. Severns Paving Co., 251 U. S. 104, 64 L. Ed. 168, 40 Sup. Ct. Rep. 73; Erie R. R. v. Board of Public Utilities Commrs., 254 U. S. 394,

41 Sup. Ct. Rep. 169. Municipal regulations not specifically authorized by statute should be reasonable as well as constitutional. Curry v. Osborne, 76 Fla. 39, 79 South. Rep. 293; 19 R. C. L. 805. As to the scope of the State police power see Conger v. Pierce County, — Wash. ——, 198 Pac. Rep. 377.

Even where public morals, health and safety are not involved, a wide latitude is allowed the legislature in making or authorizing assessments for public improvements with special benefits, where its action is not palpably unequal in results or unjustly discriminating and burdensome without any accruing benefits or is not arbitrary and wholly unwarranted. · 'See Myles Salt Co. v. Board of Commrs. of Iberia & St. Mary Drainage Dist., 239 U. S. 478, 36 Sup. Ct. Rep. 204; Withnell v. Ruecking Construction Co., 249 U. S. 63, 63 L. Ed. 479, 39 Sup. Ct. Rep. 200; Branson.v. Bush, 251 U. S. 182, 64 L. Ed. 215, 40 Sup. Ct. Rep. 113. The railroad company does not own the land in the center of the street on which its tracks are laid as in Oklahoma Ry. Co. v. Severns Paving Co., 251 U. S. 105, 64 L. Ed. 168, 40 Sup. Ct. Rep. 73. See also Louisville & N. R. Co. v. Barber· Asphalt Pav. Co., 197 U. S. 430, 25 Sup. Ct. Rep. 466.

The specific assessment in this case is not for the privilege of using the street or to conserve the public morals, health or safety; and it is manifestly unjustly discriminating in its burdens. Under the particular facts, the greatly increased burden imposed upon the company, to pay for paving one-third of the remainder of the street in addition to the entire cost of paving the space between the rails of the railroad track and two feet on each side thereof, · has no just relation to any special or general benefits of convenience or otherwise, that can result or accrue to the

company from paving the street, and the assessment as made does not conform to controlling provisions of organic law.   See 8 McQuillin's Municipal Corporations, Suppl. Sec. 2043 and authorities cited; 4 Dillon's Municipal Corp. (5th ed.) §1451 and notes with citations; Gast Realty & Improvement Co. v. Schneider Granite Co., 240 U. S. 55, 36 Sup. Ct. Rep. 254; Kansas City So. Ry. v. Road Imp. Dist. 6, 256, U. S. 658, 41 Sup. Ct. Rep. 604, decided June 6, 1921; 8 McQuillin's Mun. Corp. §2050.

The assessment complained of was not made to facilitate access to trains or to afford safety from passing trains or locomotives; and no considerations of health or morals are involved.   The power to tax for governmental purposes is not involved.   The assessment being made for a public municipal purpose, but nor for purposes of governmental administration, nor for purposes to conserve the public safety, peace, health or morals, and as no appreciable property benefits can accrue to the company, the assessment is in effect a taking of property without compensation, in violation of organic law.   See Village of Norwood v. Baker, 172 U. S. 269, 19 Sup. Ct. Rep. 187.