ERVIN, Justice.
The question presented in this appeal is the validity of an order of the Judge of the Civil Court of Record of Dade County dismissing with prejudice an action of abutting landowners (Appellants here) to recover a street improvement assessment of the City of Coral Gables in sum of $191.80 paid under protest, in which order the validity of Section 284(3) of the Coral Gables Charter, being Chapter 13972, Special Acts of the State of Florida 1929, authorizing the assessment was upheld.
We have assumed jurisdiction of this appeal pursuant to our constitutional appellate jurisdiction, the Judge of the Civil Court of Record having passed directly on the validity of said Section 284(3).
The plaintiffs below, Appellants here, Charles J. Bodner, et ux., originally filed suit in the Circuit Court of Dade County, alleging in their complaint the City of Coral Gables illegally assessed their property in the City for a part of the cost of paving a city road (Miller Road) in front thereof in said amount of $191.80. Plaintiffs demanded compensatory damages in the sum of $191.80 for the recovery of the assessment paid under protest and punitive damages in the sum of $50,000.
Subsequently, plaintiffs amended their complaint, demanding recovery of the sum of $191.80, but reducing the claim for punitive damages to $5,000.
In a second amended complaint plaintiffs alleged Section 284(3)[1] of the City Charter to be unconstitutional because it violates the due process provisions of the State and Federal constitutions and takes private property of plaintiffs for public use without just compensation. The same damages were claimed as were demanded in the first amended complaint.
*252 The main thrust of the complaint as amended, in addition to the claim Section 284(3) is unconstitutional, is that Miller Road benefitted the public only and not the abutting landowners; and that the assessment was made by the City without determination of benefits that would accrue to plaintiffs from the road improvement.
The City having filed its answers denying the allegations of the complaint as amended, and its answers to interrogatories propounded by plaintiffs, the case came on to be heard in the Circuit Court on plaintiffs’ motion for partial summary judgment and the City’s motion to dismiss the cause. The Circuit Court entered its order, first reciting that plaintiffs had withdrawn their claim for punitive damages then it denied the motion for partial summary judgment; reserved ruling on the City’s motion to dismiss and transferred the cause to the Civil Court of Record.
The plaintiffs moved the Civil Court of Record for a summary final judgment, alleging the assessment and levy of $191.80 against their property to be illegal because of the alleged invalidity of said Section 284(3).
The Judge of the Civil Court of Record, as first above related, entered order dismissing the cause with prejudice and upholding the validity of Section 284(3).
We affirm.
Procedural questions raised concerning whether the Civil Court of Record had lost jurisdiction of the cause because the claim for punitive damages was withdrawn thereby reducing the amount claimed to less than $500, or whether it ever had jurisdiction because the cause involved the legality of a tax assessment that was constitutionally cognizant only in the Circuit Court, need not be decided. However, it is our opinion that on the substantive constitutional questions it does not appear from the record the assessment is illegal or that Section 284(3) is unconstitutional on its face or was unconstitutionally applied in the fixing of the assessment on plaintiffs’ property by the City.
According to the testimony, the costs of the road improvements were apportioned among the City itself, a drainage district, and the abutting property owners. The apportionment of costs was made on a lineal front foot basis among the abutting property owners, and against the City on the road footage of intersections. The portion of the cost of the road improvement project assessed against the abutting private property owners was approximately thirty-four per cent with the City assuming the remainder of sixty-six per cent. The cost of the project was ascertained by a survey made by the City’s engineering department, including a detailed report as to the footage involved and the apportionment of costs to be assessed thereon.
The City’s answers to interrogatories signify that the percentages of assessments to abutting property owners along the improved street were determined in accordance with Section 284 of the City Charter; particularly the language therein which provides street improvement costs “to abutting property shall be apportioned the remaining costs of street improvements” in addition to cost of the road construction work at intersections, which Section 284 provides shall be borne by the City.
We do not find that Section 284 is materially different from the general law, F.S. Chapter 170, F.S.A. providing a supplemental method of making local improvements, or that it was differently applied in apportioning the costs of the road project on the front foot basis. The constitutionality of Chapter 170 has been upheld, as well as its application for assessing costs on a front foot basis. Similarly, Section 284 should be upheld.
From the unrebutted record showing of the City, it presumptively appears the Appellants, abutting property owners, received special benefits from the road improvement in not less than the amount of the assessment.
*253 In City of Treasure Island v. Strong, Fla.1968, 215 So.2d 473, at 478, this Court stated:
“When * * * the Legislature authorizes construction of a particular improvement which by its nature is designed essentially to afford special or peculiar benefits to abutting and other property within the protective proximity of the improvement, it is presumed that special and peculiar benefits may or will accrue to the properties so situated, and upon this theory special assessments are permitted without an express finding or determination by the City that the property will be benefited.”
Street improvements have been held to provide such special benefits to abutting landowners (Atlantic Coast Line R. Co. v. City of Gainesville, 1922, 83 Fla. 275, 91 So. 118); there was no need, therefore, for the City to make an express showing of special benefits received by Appellants.
The assessments could be overturned by the courts only if there were a showing that there was “an arbitrary and unwarranted exercise of the legislative power or some denial of the equal protection of the laws in the method of exercising it.” (Atlantic Coast Line, 91 So. at 122. See also Klein v. City of New Smyrna Beach, Fla. 1963, 152 So.2d 466; Rosche v. City of Hollywood, Fla. 1952, 55 So.2d 909; Meyer v. City of Oakland Park, Fla. 1969, 219 So. 2d 417, and City of Hallandale v. Meekins, Fla.App., 237 So.2d 318.) None was shown in the instant case. Each property owner’s proportion of the cost of the street improvement was determined by the front foot rule. This has traditionally been upheld as a fair and reasonable means of determining assessments. (Atlantic Coast Line, supra.)
The judgment of the lower court is affirmed.
ROBERTS, C. J., and CARLTON, ADKINS and BOYD, JJ., concur.

. “Section 284. Preliminary assessment roll.
(3) An apportionment, as between the City and property, of the cost of each improvement, to he computed as follows, incidental expense to be apportioned in the same proportion.
IN STREET IMPROA'EJIENTS
“(A) To the City shall be apportioned that part of the cost of street improvements at intersections. The word ‘intersection’ shall be deemed to include not only that part of a street which is common to another street, but also that portion of a street which would be embraced within the extension of another street entering into it or meeting it if such other street should be extended.
“(B) To abutting property shall be apportioned the remaining cost of street improvements.”