## TOWN OF MONTICELLO v. MARY P. FINLAYSON

17 So. (2nd) 84                                           January Term, 1944
March 10, 1944                                                      En Banc
Rehearing Denied March 31, 1944

*Ausley, Collins & Ausley,* for appellant.

*D. A. Finlayson* and *Davis, Davis & McClure,* for appellees.

THOMAS, J.:

The statute to which reference will often be made in our discussion of the salient points of the appeal is Chapter 9298, Laws of Florida, Acts of 1923, now appearing in Florida Statutes, 1941, and in F.S.A. as Sections 170.01 et seq. We say that repeated reference will be made to the law because it was to foreclose liens created under it that suit was brought by the town, appellant, against the appellee property owner and her husband. Prior to the creation of these liens, according to the bill of complaint, resolutions complying with Section 3 of the Act had been adopted by the town council. They provided for the improvement of certain streets and sidewalks on which were located two lots then owned by the predecessors in title of appellee. Each of them, too, provided that two thirds of the cost of construction should be assessed against the owners of lots on the street, according to front footage, and that the remaining one third should be borne by the municipality.

In the pleading there were described in some detail the various steps taken by the municipality or its officers from the adoption of the original resolution forming the basis for the liens and the issuance of bonds until the liens were perfected. It does not appear necessary to elaborate further on the contents of the bill so far as they referred to the procedure followed by the town council to put in motion and consummate the paving program.

The work contemplated by the town council was completed, so the pleader continued, and the assessments for the property owners' share of the cost were required to be paid in ten annual instalments drawing interest at the rate of eight per cent per annum. Payments were made by the then owner on the instalments for improvements abutting the property of the appellee, some as early as 1926 and some as late as 1929, excepting, however, that none of the assessments for construction of sidewalks was discharged.

Summarizing, the suit was instituted to enforce by foreclosure the payment of these liens, the pleader alleging that in each instance the requirements of the law which we have cited were met in every material particular.

After detailing the procedure culminating in the establishment of liens and after specifying the amounts in default against each lot of the appellee this feature was added in the bill; when the liens attached and the improvements were installed the property involved in this suit was not owned by the appellee. She first became interested in the lots about the year 1927 when she inherited from her father a mortgage on them. In her bill to foreclose this mortgage, filed in the year 1933, she averred that the liens involved in the instant suit had become due and prayed that the mortgagors be required not only to pay the money secured by the mortgage but also such sums as appeared due on the liens. At the trial of that foreclosure suit the amounts of the liens were established, and eventually the property was sold by the master in chancery to Mary P. Finlayson, plaintiff there, appellee here. The sum realized from the sale was not sufficient to discharge the debt, so she applied for a deficiency decree which was subsequently entered specifically providing that she recover, to quote the present bill, "from the said defendants the sum of $4,925.87, which was the amount determined to be due the said Mary P. Finlayson 'for past due taxes and improvement liens.' " From an exhibit attached to the bill it appears that this appellee for a consideration of $2,000 satisfied the deficiency decree. This, averred the pleader, established in the suit of the appellee the validity of the very improvement liens which she in the instant case, attacked.

In the answer the authority of the town to invoke the provisions of Chapter 9298, supra, was challenged because of the alleged failure of the officers to follow the requirements there defined in determining the burden which should be placed against the properties abutting the streets improved. Great emphasis was placed by the appellees on the failure to fix the amount of special benefits, and this alleged dereliction was presented in various ways. For instance, it was

charged that no notice was given of a hearing to determine *special benefits;* that no hearing was held to consider testimony about *special benefits;* that "no *special benefits* were pro-rated among the various pieces of abutting property;" that "the assessment was made in proportion to the costs of such improvements and in entire disregard to any *special benefits;*" that "the governing authority . . . never . . . discerned any . . . *special benefit* accruing . . . to the property;" that "on the contrary, the value of the . . . property was actually lowered."

Although the actions of the officials generally were questioned it is obvious from the answer, the brief, and the argument of appellees that the attack was centered upon some failure on the part of the officials to investigate and determine what special benefit inured to the property of the defendant by the improvements irrespective of the proportionate cost of the entire improvement allotted according to linear feet along the street.

Further answering, defendants admitted that in the suit for foreclosure which resulted in the appellee Mary P. Finlayson acquiring title to the property it was alleged that the paving and sidewalk liens were long past due, but they denied that the bill in that suit contained a prayer for the payment specifically of amounts due on these assessments. They denied also that in the subsequent petition for a deficiency decree they particularly sought recovery for these items and asserted that they prayed only a money judgment for the remainder of the deficiency after credit had been allowed for the net proceeds of the sale.

Although, as we have stated, the appellees stressed the absence of any special benefit to the property now owned by one of them, nevertheless their answer having contained the bald statement that the town failed utterly to comply with the procedure outlined in Section 9298, supra, it may not be amiss to give the result of our careful examination of the evidence offered by the plaintiff in support of the bill of complaint. Our perusal of the record has convinced us of the propriety of the governing authority in its every action from the inception of the paving program until its accom--

plishment. The requisite resolutions, plans, specifications, and the like seem to have been adopted in the manner and at the time required by the law, and evidently all provisions for publication of notices and assessment rolls were scrupulously obeyed. The governing authorities, sitting as an equalizing board, after due notice of their meeting, considered and determined complaints and made necessary adjustment in assessments. Therefore, in the main, no defect in the procedure resulting in the liens against the property of appellee has been discovered.

Evidently it is appellee's view that more than this was required of the city officials, a thought probably suggested by some of the phraseology in Section 2 of the act. We quote so much of this section as is necessary to present clearly the point: "Special assessments against property deemed to be benefited by local improvements . . . shall be assessed upon the property specially benefited by the improvement in proportion to the benefits to be derived therefrom, said special benefits to be determined and prorated according to the foot frontage of the respective properties specially benefited by said improvement, or by such other method as the governing body of the municipality may prescribe." It is patent from this record that the property of appellee was benefited by the paving of the street on which it abutted and by the construction of the sidewalk. The town council so found. Each of the three resolutions authorizing the work contained the following declaration quoted from one of them: "It is the determination of the Town Council, with the advice and consent of the Mayor of said town, that all lots and lands adjoining and contiguous or bounding and abutting upon the several streets . . . will be specially benefitted by the improvements provided for in this resolution, and that the special assessments to be made against all lots and lands adjoining and contiguous or bounding and abutting upon said contemplated improvements, shall be made upon a foot frontage basis, and that in the preparation of the special assessment roll . . . such special benefits shall be determined and pro-rated according to the frontage of the respective lots . . . specially benefited by said improvements." So it appears from the

official records the governing authority did, as they were authorized by the Legislature of Florida, determine special benefits to the property which would accrue from the proposed improvements and did prorate it according to "foot frontage" in obedience to the command in Section 2 of the law. Manifestly, special benefit which they determined would result coincided with the cost per front foot of installing the improvement, and in the state of this record, there being no impeachment of this action on the part of the officials save the testimony of the appellee, husband of the property owner, we cannot but conclude that the action of the authorities was proper, a view bolstered by the evidence which we will presently digest in discussing another aspect of the case, estoppel.

It is conceivable that cases might arise where topography or other conditions, or the character of the whole plan, might make unjust the allocation to a particular piece of property of the cost of that part of the construction contiguous to it, after deducting the share assumed by the municipality, where the property owner's share of the expenditure would not correspond with the value of the benefit. Here, however, the defense amounts to little more than pitting the conclusion of the witness as to the unenhanced value of the lots against the authoritative decision of the governing body. This witness was the only one introduced by appellees. He stated flatly that there was no advantage to the property in the construction of a sidewalk and the paving of the street, but the reasons he gave for this position were hardly convincing. Substance of them was that the sand-clay surface existing before the work was done was sufficient for the demands of traffic and that the value of the lots had not been increased by the improvement. This testimony was not, in our opinion, sufficient to overcome the finding of the town council we have quoted. It is interesting to note in this connection that when asked if he considered the property would be just as valuable if the street were not paved he said, "Why sure," and then added, "if the rest of the town were not paved." When it is remembered that the project involved many of the streets in the central and more heavily traveled portion of the city the

qualification given by the witness seems to counteract his insistence that no benefit to the property did in fact derive from the improvement.

The testimony of the witness, supporting co-appellee's position, is further weakened by his admission that both of them paid, albeit reluctantly, the assessments levied under the identical improvement plan against other property they owned.

The appellees insist that the liens sought to be foreclosed are void because of the failure of the governing authority to go farther than the records we have described disclose in determining the extent of benefit to individual properties. To substantiate the assertion they lean quite heavily on our opinion in City of Fort Myers v. State of Florida, 95 Fla. 704, 117 So. 97, the record in which, they urge, was "perfectly parallel with the record in our own [this] case." The chancellor held the view that the evidence introduced by the plaintiff was insufficient to meet the rule announced in the Fort Myers case. That controversy is readily distinguishable from this one for reasons given in our opinion, Finlayson v. Town of Monticello, 137 Fla. 697, 189 So. 21, written when appellees here presented for our consideration the order denying their motion to dismiss the *original bill, all of the allegations of which material or relevant to the questions now posed appear in the amended bill presently being considered.*

Having held *that* bill sufficient and being now convinced that every material allegation of *the present one* was proved despite the evidence adduced by the defendants, it occurs to us that the only consistent decree would be one favoring the plaintiff.

Bearing in mind the premise that no defects in the procedure culminating in the liens rendered them void, we think the combined circumstances reflected in the record establish such acquiescence on the part of the appellee property owner that she may be said to have become estopped. At the time the assessments were made the property was owned by R. J. Taylor, the person who gave a mortgage to the father of one of the appellees. This owner testified in behalf of the town.

He stated that he was familiar with the plan and raised no objection to it because, as we understand his testimony, he felt it would increase the value of the property which would therefore be "especially benefited in proportion to the assessment which was proposed to be made." This attitude on his part seems to have been later emphasized by the payment of some of the assessments before he lost the property to the appellee by foreclosure of the mortgage he had given and she had inherited. It is a mere matter of computation that approximately fifteen years had passed from the time the program was inaugurated until the attack against the procedure was made in this suit, and a period almost as long expired between the acquisition of the mortgage by appellee and her challenge to the validity of the liens. The record does not reveal that she ever, meanwhile, made any protest. At the time her predecessor owned the property the completed assessment roll was published, with notice that at a stated time complaints from dissatisfied property owners would be heard, and the roll finally approved. It has been held by this Court that the purpose of such a notice is to give opportunity to a property owner to show "that his property will not derive any special benefit from the improvement" or that it will be "made to bear an unjust proportion of the taxation." Summerland v. City of Punta Gorda, 101 Fla. 543, 134 So. 611. As we have said, not only did the then owner take no advtange of this opportunity to contest the procedure, but he actually acquiesced in it because of his opinion that the improvement was justified and would enhance the value of the property.

The improvements have long ago been made, and it was estimated by an officer of the town that ninety per cent of all assessments levied under the general plan had been paid. Among those who had met all instalments (on other property) were both appellees. It is true that the appellee D. A. Finlayson, whose wife owned the property in question, had filed a protest on the general ground "that the said assessments and each of them are illegal . . . in law and in fact," but little weight can be given it in considering the proper decree in this case because, in the first place, it was not filed

in behalf of his wife; in the second place, she did not at the time own property in question; and in the third place, by his own testimony he eventually paid the assessments on property he owned.

This brings us to the remaining circumstances of such importance that it may be considered worthy of mention, namely, the construction to be placed upon the bill filed by the appellee in 1933 to foreclose her mortgage and the supplemental proceedings, all of which we mentioned in our analysis of the bill and answer. Her bill of complaint contained the positive allegation "that the said defendants . . . neglected and failed to pay the town taxes on said property since the year 1926; that there are paving and side-walk liens now existing against the said property in favor of the town of Monticello, Florida, for assessments against the property long past due," and it included a prayer that "an accounting be had and stated . . . of the amount of unpaid taxes and assessments for paving and sidewalks against said property." There was incorporated the usual prayer that in default of payment the premises be sold to satisfy the indebtedness. Final decree was eventually entered and the property sold under it to the appellee Mary P. Finlayson for less than the amount of the decree. When the chancellor confirmed the master's report he adjudged "that the complainant do have and recover of and from the defendants . . . the sum of $4925.87, which is the amount due the complainant for past due taxes and improvement liens, and that execution issue therefor." About five years later the appellees executed an instrument satisfying that judgment upon payment of $2,000.

In view of the allegations and the prayer in the bill of complaint in the other suit and the recital in the deficiency decree it seems only fair to decide that the appellee's position in this suit may be added to the other circumstances indicating that positively, as well as passively, she had become estopped from assailing the actions of the governing authority.

Thus we conclude that the appellant proved the material allegations of the bill, which we had on a former occasion held sufficient, and established by the testimony the observ-

ance by the governing authority of the esential requirements of the law in inaugurating and effectuating the paving project. The record reveals, also, circumstances and conditions establishing estoppel on the part of the appellee property owner. The final decree dismissing the bill of complaint is, therefore, reversed with directions to enter one for the appellant for the amounts which may be easily calculated from the evidence and the master's report.

Reversed.

BUFORD, C. J., ADAMS and SEBRING, JJ., concur.

BROWN, J., concurs in conclusion.

CHAPMAN, J., dissents.

TERRELL, J., not participating.