215 So.2d 473 (1968)
CITY OF TREASURE ISLAND, Florida, a Municipal Corporation, Petitioner,
v.
Marcia F. STRONG et al., Respondents.
No. 37240.
Supreme Court of Florida.
October 30, 1968.
Rehearing Denied December 2, 1968.
*474 Hammond & Holman, Pinellas Park, for petitioner.
Joseph D. Berchtold, of Berchtold, Thomas & Warren, Pompano Beach, for respondents.
*475 ERVIN, Justice.
We have for review by petition for writ of certiorari the decision of the District Court of Appeal, Second District in City of Treasure Island v. Strong, reported in 206 So.2d 269.
The facts relevant to the present controversy are: On January 6, 1959 Petitioner City of Treasure Island, by its governing Board of Commissioners, enacted Ordinance No. 100 authorizing the issuance of $350,000 in revenue certificates to finance the cost of a beach erosion control groin system. The ordinance declared said system to be imperative to the preservation of properties within the city and prevention of eventual loss due to encroachment of the sea. The ordinance further provided that costs of the project were to be assessed against the abutting real estate and any other properties of sufficient proximity to such improvements to receive benefits of protection therefrom, and declared that the revenue certificates were to be payable solely from the assessment fund. The Circuit Court for Pinellas County entered a decree validating the revenue certificates on March 17, 1959. The decree stated that the cost of the improvements was to be specially assessed against the real estate specifically benefited thereby and ordered that the special assessments should be made in conformity with Chapter 170, Florida Statutes, F.S.A.
On June 2, 1959 Petitioner's Board of Commissioners adopted a resolution ordering construction of the erosion control system, designating the area in which properties were to be assessed and the method of assessment to be used. The resolution provided: the entire cost of said improvements shall be assessed against the properties lying south of 106th Avenue on a front foot basis; 80 per cent of the total cost to be assessed against the properties fronting on the Gulf of Mexico and 20 per cent to be assessed against the remaining properties. The resolution further provided: the assessments shall be levied in accordance with the provisions of Chapter 170, Florida Statutes, 1957, F.S.A. After publication of the assessment roll and notice to property owners, Petitioner held a public hearing on the assessment roll on June 23, 1959. Respondents failed to appear at this hearing and they offered no objection at that time to the assessments. At the conclusion of the hearing a resolution was adopted by Petitioner's Board of Commissioners confirming and approving the assessments. This resolution recited that the Board of Commissioners had determined that all of the special assessments, as published and as adjusted at the equalization hearing, were on a basis of justice and right.
Construction of the erosion control system was completed in December of 1959. In January, 1964 the City sought in the Circuit Court to foreclose several special assessment liens against certain properties located within said City and bordering on the Gulf. The complaints were consolidated for trial and, by answers duly filed, owners and mortgagees of the affected properties objected to the assessments, claiming that their properties had not benefited from the construction but had been injured, and contending they were entitled to raise the absence of such benefits as a defense to foreclosure of the assessment liens. The Circuit Court entered a final decree declaring the special assessments sought to be foreclosed by the City to be void and unenforceable. The Circuit Court found that the lands in question had not benefited by the construction.
On appeal, the District Court held that the Respondents were not precluded from contesting the foreclosure proceedings on the basis of lack of benefits received. After consideration of the record, briefs and oral argument, we conclude the District Court erred in sustaining the judgment of the Circuit Court and that such decision is in direct conflict with the decisions hereinafter noted.
We are cognizant of the well-settled principle in this state that special assessments should not exceed the benefits *476 accruing to the properties improved and that an assessment in excess of benefits is deemed a taking of property without due process to the extent of the excess. Stockman v. City of Trenton (1938), 132 Fla. 406, 181 So. 383. We are of the view, however, that a property owner may be precluded under certain circumstances from asserting lack of benefit as a defense to a foreclosure of the assessment lien. In Abell v. Town Boynton (1928), 95 Fla. 984, 117 So. 507, 509, we stated:
"[7] The record discloses that the assessment roll was made up and published and that the town council advertised the time and place for and did sit as an equalizing board, as required by chapter 9298, Laws of Florida. Appellant was on notice that improvements would be made, and that all lands including his own would be assessed and bonds issued to pay for them. The contract was awarded, the work completed, bonds were issued and validated, and, while appellant was on notice of all these proceedings, he offered no resistance to any of them, raised no objection to the assessment against his lands or to the appropriation of the right of way across them at the time provided by law for him to do so, but months after filed his bill in this cause.
"[8] Under the law, appellant could have complained of the assessment before the town council sitting as an equalizing board, he could have enjoined the letting of the contract for the improvement over his lands, or he could have intervened and resisted the validation of the bonds, but, having failed to avail himself of any of these remedies provided for his protection, the general rule is that he is estopped and cannot be heard by a judicial tribunal to assert the injustice, the invalidity, or the unconstitutionality of the assessments against him. * * *"
We are aware that in the present case there was a finding of fact by the Circuit Court that no benefits accrued to Respondents' assessed property as a result of the groin construction. We are also aware that validation of the revenue certificates occurred prior to preparation and approval of the assessment roll and accordingly the District Court correctly determined that the validation proceedings did not put in repose questions pertaining to the validity of the assessment. We are of the view, however, that these differences are not sufficient to preclude application of the waiver or estoppel principles applied in Abell. Accordingly, we find error and conflict in the District Court decision because of its departure from the rationale of Abell.
In the present case, as in Abell, the complaining property owners made no effort to raise objections to the contemplated improvements at the assessment hearing. Nor did the complaining property owners ever attempt to enjoin construction of the groins adjacent their lands. Having failed to take advantage of these opportunities to challenge the improvements, and the City having proceeded without objection to complete the construction of the erosion control system, we think Respondents have lost their right to assert that the assessment is invalid because of a lack of benefits accruing to their assessed properties. See also: Gulf View Apartments v. City of Venice (1933), 108 Fla. 41, 145 So. 842; Summerland, Inc. v. City of Punta Gorda (1931), 101 Fla. 543, 134 So. 611; Rosche v. City of Hollywood (Fla. 1952), 55 So.2d 909.
We now direct attention to the District Court's conclusion that the City failed to make an official determination or finding by express language in its resolution that the assessed properties would be specially benefited by the improvement, and that in the absence of such a determination or finding, Respondents are not precluded or estopped from challenging the assessments at the foreclosure proceeding.
Although the District Court did not rule that the City's failure to make an antecedent determination of special benefits accruing *477 to the assessed property rendered the assessment void, this holding is implicit in the reasoning and conclusions of the lower court.
It seems well established that principles of estoppel and waiver will not operate to bar an attack against irregularities and defects which by their nature render assessment proceedings void, as opposed to voidable. See Gulf View Apartments v. City of Venice, supra. On the other hand, defects or irregularities which do not fault the jurisdiction or authority of the taxing body to levy the assessment will not preclude application of principles of waiver and estoppel but, if timely raised, may provide grounds for invalidating an assessment. See Summerland, Inc. v. City of Punta Gorda, supra. See also, Weinberger v. Board of Public Instruction (1927), 93 Fla. 470, 112 So. 253.
The District Court not only failed to distinguish the line of demarcation between defects or irregularities which render the assessment proceedings void and those which merely operate to render the same voidable, but also attached overreaching importance under the facts of this case to the City's failure to determine the special benefits that would accrue to the properties assessed.
We note that the City of Treasure Island was empowered by its Charter, Chapter 31322, Special Acts, 1955, to levy special assessments for the cost of constructing groins of the nature here involved. Article VI, Section 52 of said Charter authorizes the City to issue special improvement revenue certificates for the construction of groin systems, etc., and to fund said certificates by levying special assessments on the abutting property and other property within the City that is of sufficient proximity to such improvements to receive benefits of protection therefrom. To implement its authority under its Charter, as hereinbefore related, the City enacted said Ordinance No. 100 and pursuant thereto issued said revenue certificates, secured their validation and provided for the special assessments to amortize the certificates. These formal municipal procedures, taken together, constituted the plan or program for the erosion control groin system, its construction, financing, and liquidation of the cost of construction. It is reasonable to say that by virtue of these procedures everyone whose lands were specially assessed was placed on timely notice of the groin project and his tax obligations thereunder.
Because of the foregoing procedures employed in the present case, we conclude the City substantially complied with all jurisdictional requirements necessary to vest it with the power to levy the assessments in question. In reaching this conclusion, we are not unmindful that the decree validating the groin system revenue certificates and the resolution authorizing special assessments for the cost of the project provided that said assessments should be made and levied in conformity with Chapter 170, Florida Statutes, F.S.A. Ordinarily, when Chapter 170 is followed as the enabling authority for the implementation of a special assessment improvement project, the first step calls for the taxing authority to adopt a resolution pursuant to F.S. Section 170.03, F.S.A. Some decisions interpreting Chapter 170, as well as specially enacted charter provisions which resemble this chapter, seem to adopt the view that in the resolution authorizing the local improvement the taxing authority must make a determination in so many words that the assessed lands will be specifically benefited by the improvement. See City of Ft. Myers v. State (1928), 95 Fla. 704, 117 So. 97; Lots No. 1685 v. Town of DeFuniak Springs (1937), 127 Fla. 348, 174 So. 29; Town of Monticello v. Finlayson (1944), 154 Fla. 274, 17 So.2d 84. Upon close inspection, however, it does not appear an official determination of special benefits must be made and set forth in express terms in all cases in the resolution authorizing a special assessment. Certain types of improvements authorized by enabling legislation by their *478 nature give rise to presumptions of special benefits to lands assessed for the cost of such improvements. See Atlantic Coast Line R. Co. v. City of Gainesville (1922), 83 Fla. 275, 91 So. 118, 29 A.L.R. 668, where the Court stated:
"A special assessment for benefits is a mode of levying upon particular property and charging it with a local burden, with reference to the peculiar and specific benefit to such property by reason of the improvements. When such assessments are levied upon property bordering upon an improved street, it is assumed or presumed that such abutting property receives a peculiar benefit from the improvements that justifies special contributions being paid by the abutting owner in addition to and exclusive of the general tax which he pays as one of the general public. * * *
"That the question of whether the owners of property abutting on a street would or would not be benefited by street improvements is a legislative, and not a judicial question, is well settled. * * * (citing cases)
"Such special assessments, when levied on property that actually abuts on an improved street, are sustained by the courts without regard to the question of whether or not a particular piece of property abutting thereon derives any benefit from the improvements, upon the presumption that such property must necessarily be benefited, and that the benefit it derives from the improvements are peculiar to its location as property abutting on the street. * * *" (Emphasis supplied.)
Applying the rationale of the Atlantic Coast Line R. Co. case to the instant situation, we think it is not fatal to the validity of the special assessments because the City failed to make a formal determination of the benefits accruing to the property ownerships assessed. Under Article VI, Section 52 of its Charter, the City was empowered by the Legislature to issue revenue certificates for the construction of an erosion control groin system and to assess the cost of such an improvement project against the "abutting property and any other property within the city that is of sufficient proximity to such improvements to receive benefits of protection therefrom." (Emphasis supplied.) By the use of this language in the Charter, we believe the Legislature itself necessarily determined that the construction of an erosion control groin system by the City presumably would result in benefits inuring specially to the properties protected thereby. Accordingly, it was not absolutely incumbent on the City to make a separate determination of the special benefits to each of the properties abutting the groin improvement or located so as to receive protection therefrom. When, as in the present case, the Legislature authorizes construction of a particular improvement which by its nature is designed essentially to afford special or peculiar benefits to abutting and other property within the protective proximity of the improvement, it is presumed that special and peculiar benefits may or will accrue to the properties so situated, and upon this theory special assessments are permitted without an express finding or determination by the City that the property will be benefited. See Atlantic Coast Line R. Co. v. City of Gainesville, supra. In any event, the existence of the legislative charter authority, coupled with the related municipal action taken thereunder to implement the erosion control groin system and the levy of the special assessments to defray the cost of the system, created a presumption of benefits to Respondents' lands and devolved upon them the duty to proceed timely to show the contrary and avoid the special assessments.
In reaching this conclusion, we point out the instant special improvement may be different in legal contemplation from other types of improvements authorized by charter provisions of municipalities or the general statute, F.S. Chapter 170, F.S.A. Under such enabling provisions the *479 existence of special or peculiar benefits may or may not be presumed, depending on the nature of the improvement and the benefits normally accruing therefrom. Where there is no obvious relationship in terms of special benefits between the property sought to be assessed and the nature of the improvement project, a specific determination of such benefits is necessary to sustain the assessment, and the absence of such a determination constitutes a jurisdictional defect in the assessment proceedings. On the other hand, when, as in the instant case, there is an inherent and obvious legislative determination in the enabling provision that the benefits flowing from a particular improvement are of the kind as would usually accrue to particular properties, it is not absolutely incumbent on the taxing authority to make a determination that each property ownership will be specially benefited by the improvement. Compare Cape Development Co. v. City of Cocoa Beach (Fla.) 192 So.2d 766, text 772 and 773.
In this case the City, under legislative authority, possessed the power to allocate on a fair and reasonable basis the benefits presumed to arise from the improvement and to prorate the same in terms of the construction cost, subject, however, to a timely showing by an affected property owner that such collective allocation was erroneous and unfair for the reason that the assessment against his property was not supported by commensurate special benefits derived from the improvement. This right is endowed by the constitutional imperative that an assessment in excess of special benefits accruing to the property is a confiscation or taking of property without due process. See Stockman v. City of Trenton, supra. However, it is firmly established that such constitutional rights designed solely for the protection of the individual concerned may be lost through waiver, estoppel or laches, if not timely asserted. See Summerland, Inc. v. City of Punta Gorda, supra.
From the foregoing, we conclude that the challenged assessments were not void so as to render them subject to attack in the manner herein sought. And, further, that Respondents' failure to timely assert lack of benefits as a basis for challenging said assessments precluded them from raising this lack as a defense at the foreclosure proceeding.
The judgment of the District Court is quashed and the cause remanded for proceedings consistent herewith.
It is so ordered.
CALDWELL, C.J., and DREW, THORNAL and HOPPING, JJ., concur.