BOYD, Justice
(dissenting):
This cause is before us on direct appeal from the Circuit Court, Manatee County, to review the order of that Court validating sewer revenue and assessment bonds issued by Manatee County in the amount of 24.4 million dollars.
The unique and questionable feature of these bonds is the pledge in support of the bonds of special assessments on property in the area at the rate of $8 per front foot prior to any determination of special benefits to the property involved. The County proposes to issue the bonds, construct the sewers and then have a hearing to determine special benefits to the property assessed To date there has admittedly been no compliance with Florida Statutes § 153.-05, F.S.A., pertaining to the levy of special assessments for construction of sewer and water systems. This statute sets out the procedure to be followed in making special assessments for this type of improvement and it includes the filing of a preliminary assessment roll, publication of a notice of a meeting for all interested persons to appear and file objections to the assessment roll and determination that the assessment is not in excess of special benefits to the property assessed.
The County contends that the procedure under Florida Statutes § 153.05, F.S.A., is a collateral proceeding which may be had after validation of the bonds in question. At that time, says the County, there will be a determination as to whether or not particular property has received sufficient benefit as required by Florida Statutes § 153.05.
The Resolution of the Board of County Commissioners of Manatee County, which states that it is a contract between the County and the bondholders, expressly provides that it is “adopted pursuant to the provisions of Chapter 153, Part I, Florida Statutes . . . .” but admittedly the bonds are to be issued prior to compliance with that Act. The Resolution pledges the net revenue derived from the sewer system, surplus water revenues, and special *704 assessments [1] levied at a stated rate “not to exceed eight dollars ($8.00) per front foot of such lands and real estate, abutting on or which can use the facilities of said sewer system. . . .”
The defect in the proposal is obvious. Once the bonds have issued, supported in part by a pledge of special assessments at the rate of $8 per front foot, the assessments could not subsequently be adjusted in favor of property owners showing little or no benefit from the proposed improvement without impairing the bondholders’ security. The issuance of the bonds would constitute a lien on the property in the area to the extent of $8 per front foot of sewer line. Any subsequent hearing on benefit to the property under § 153.05 would be only a matter of form, since the assessment rate could not be altered.
Appellees concede that the requirements of § 153.05 must be met before a lawful special assessment can be levied against individual property, but contend that proceedings under § 153.05 including determination of benefits are “collateral” and can be instituted after validation and issuance of the bonds supported by those assessments. In support of this contention, ap-pellees cite this Court’s decision in City of Treasure Island v. Strong.[2] In that case, the City issued $350,000 worth of revenue certificates to finance the cost of a beach erosion control groin system. The bonds were validated by the Circuit Court in an order .stating that the cost of the improvements was to be specially assessed against the real estate specifically benefitted in conformity with Chapter 170, Florida Statutes, F.S.A., an Act authorizing cities and towns and municipal corporations to make special assessments for certain improvements. After issuance of a resolution authorizing construction of the project, the assessment roll was published and hearing was held pursuant to Chapter 170. However, respondents, who subsequently sought to attack the assessment, did not appear at the hearing. More than four years after the hearing and completion of the construction, respondents sought to prevent foreclosure of liens against their gulf front properties on the grounds that their properties were not benefitted by the beach erosion project. This Court held: [3]
“We are cognizant of the well-settled principle in this state that special assessments should not exceed the benefits accruing to the properties improved and that an assessment in excess of benefits is deemed a taking of property without due process to the extent of the excess. * * * We are of the view, however, that a property owner may be precluded under certain circumstances from asserting lack of benefit as a defense to a foreclosure of the assessment lien.”
In the Treasure Island case, this Court found that the issuance of the bonds prior to a determination of special benefit from the project was not void but merely voidable so that estoppel barred attack on the assessment. The irregularity of issuing the bonds without a prior determination of benefits was not a jurisdictional defect, the Court held, because the City’s Charter, Chapter 31322, Special Acts 1955, authorized special assessments for cost of constructing a groin system and gave rise to a *705 presumption of special benefits to the land affected. This Court stated :[4]
“When, as in the present case, the Legislature authorizes construction of a particular improvement which by its nature is designed essentially to afford special or peculiar benefits to abutting and other property within the protective proximity of the improvement, it is presumed that special and peculiar benefits may or will accrue to the properties so situated and, upon this theory special assessments are permitted without an express finding or determination by the City that the property will be benefited. * * * In any event, the existence of the legislative charter authority, coupled with the related municipal action taken thereunder to implement the erosion control groin system and the levy of the special assessments to defray the cost of the system, created a presumption of benefits to Respondents’ lands and developed upon them the duty to proceed timely to show the contrary and avoid the special assessments.
“In reaching this conclusion, we point out the instant special improvement may be different in legal contemplation from-other types of improvements authorized by charter provisions of municipalities or the general statute, F.S. Chapter 170, F. S A * * *”
Unlike the Treasure Island case these proceedings do not arise under a special act of the Legislature or pursuant to Florida Statutes Chapter 170, applicable to “any city, town or municipal corporation of this state.” The bonds in the instant case are issued by the County as part of an ambitious regional sanitary sewer system to serve a large portion of the Western and Southwestern unincorporated areas of Manatee County, as well as the four separate municipalities of Anna Maria, Holmes Beach, Bradenton Beach and Longboat Key. The proposed sewer line is to be run through incorporated as well as unincorporated areas, and will include areas already served by existing sewer systems. No presumption of special benefit to all affected property can be indulged under such circumstances.
We note that the proposed project is for the laudable purpose of pollution control. Section 14 of Article VII of the Florida Constitution, F.S.A., a provision adopted in 1970, provides for the issuance of state bonds pledging the full faith and credit of the State, which bonds can be issued without an election to “finance the construction of air and water pollution control and abatement and solid waste disposal facilities.” This constitutional provision could be the answer to finance the project here proposed. However, the bonds as they stand presently do not meet the requirements of any authorizing act or constitutional provisions. To validate such bonds would be a disservice to both the people of Manatee County and the prospective bondholders.
Accordingly, for the reasons above stated, I cannot agree with the majority view validating the bonds and must respectfully—
Dissent.
ROBERTS, C. J., agrees.

. “The payment of the debt service requirement of all the Bonds issued hereunder shall be further secured forthwith equally and ratably by a lien on and pledge of the proceeds of the special assessments levied and collected on the lands and real estate in said County specially benefited by the construction and acquisition of said Sewer System authorized herein and the proceeds of said special assessments, as defined herein, are hereby irrevocably pledged to the payment of the debt service requirement on said Bonds, as the same become due and payable, in the manner provided in this resolution.”

. 215 So.2d 473 (Fla.1968).

. Id. at 475.

. Id. at 478.