In the Matter of PINEVIEW
ESTATES, INC., Debtor.

CREWS LAKE ROAD AND BRIDGE
DISTRICT, Plaintiff,

v.

PINEVIEW ESTATES, INC. and
Federal Deposit Insurance
Corporation, Defendants.

Bankruptcy No. 84–2249.
Adv. No. 85–30.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Jan. 2, 1986.

David G. Mulock, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, Fla., for FDIC.

Peter T. Roman, Dunbar, Dunbar, Roman, Anderson & Schafer, P.A., Dunedin, Fla., J. Michael Rediker, Birmingham, Ala., Douglas C. Spears, Smathers, Pleus, Adams, Fasset & Divine, P.A., Orlando, Fla., for plaintiff.

Langfred W. White, Tampa, Fla., for defendants.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

ALEXANDER L. PASKAY, Chief Judge.

In 1974 the Florida Legislature established a special taxing unit known as the Crews Lake Road and Bridge District (District). The District was established for the purpose of creating a tax base in order to service a bond issue sold to the public. The funds derived from the sale of the bonds were to be used for the construction of roads and bridges and improvements on the real property located within the boundaries of the District. The only property within the boundaries of the District was then owned by Suncoast Highlands, Inc. and by various of its principals including Thomas Petersen and Peter Lenhardt.

The property was acquired for the purpose of developing it as a residential community. Mr. Petersen and Mr. Lenhardt became members of the Board of Commissioners appointed by the Governor of the State of Florida. In 1977 the District issued bonds to be serviced by a combination of general obligations and special assessments. The bond issue was validated by the Circuit Court of the Thirteenth Judicial District by the entry of the amended final judgment entered in May, 1977. This final judgment was never appealed. In 1979, the District levied a special assessment on the subject property to service the bonds.

At that time the property was encumbered by a mortgage lien held by Chemical Bank of New York which was in default, as a result of which the mortgage was ultimately foreclosed, divesting Suncoast Highlands of its title to the subject property. The county taxes which included the taxes assessed by the District were also unpaid and were past due. In due course, the tax collector sold the tax deed on the subject property. The tax deeds were purchased by Mr. Petersen through an intermediary third party, who, in turn, conveyed title to the subject property to a corporation newly formed for the obvious purpose of acquiring title to the subject property and to ultimately develop the subject property. This new corporation is Pineview Estates, the Debtor involved in this Chapter 11 case, which is presently seeking to effectuate a reorganization of its affairs.

The resolution to impose the special tax was adopted by Linda B. Dove, N. Scott Coates and Connie C. Bishop. It is without dispute that none of them were elected or appointed to serve as commissioners for the District when the resolution was passed and only Linda B. Dove has ever been appointed to serve as commissioner for the District. (Cert. of Sec. of State). There is no evidence in this record that either of the other two, i.e. Ms. Coates or Ms. Bishop

were ever elected or appointed to serve as commissioners for the District. It is equally without dispute that Linda B. Dove's term as commissioner expired in 1978 or a year before the assessment was made pursuant to the resolution. There is nothing in this record to show that the persons who were acting as commissioners at the time the resolution was passed ever qualified to serve as commissioners by posting a bond required by § 336.62(5)(b) of Fla.Stat. or met the qualification to serve as commissioner for the District as required by § 336.62(2)(g).

As noted earlier, in 1979 the District levied special assessment taxes on the subject property in order to serve the bonds. In due course, these taxes were certified to the Tax Collector of Pasco County and by operation of law they became a lien on the subject property as of January 1, 1979, and it is without substantial dispute that in 1981 the Debtor granted a mortgage lien encumbering the subject property in favor of the Metropolitan Bank (Metropolitan). There is no dispute that this mortgage was granted to Metropolitan only as an additional collateral to secure three previous loans made by Metropolitan not to this Debtor but to Mr. Petersen personally, to Ocala Properties, Ltd., and Ferndale Estates, Inc.—entities owned and controlled by Petersen. There is no question that this Debtor received no consideration whatsoever either by funds from Metropolitan or otherwise. At the time the Debtor granted the mortgage lien to Metropolitan, all three loans mentioned earlier were already in default.

In 1982 Metropolitan collapsed and, as a result, the Comptroller of the State of Florida closed Metropolitan pursuant to § 658.79 Fla.Stat. (1981). On February 12, 1982 the Comptroller invited FDIC to assume the role of the liquidator of the assets of Metropolitan. FDIC accepted the invitation and pursuant to 12 U.S.C. 1821(c) took over the assets of Metropolitan and pursuant to a "Purchase and Assumption Agreement" acquired among other receivables the mortgage encumbering the subject property now owned by Pineview, the Debtor.

On September 14, 1984 the District instituted an action pursuant to § 170.10 Fla. Stat. in the Circuit Court in and for Pasco County and sought to foreclose the tax liens imposed on the subject property by the special assessment levied on the property by the District. The District named the Debtor and the FDIC as defendants in the foreclosure action. The FDIC removed the foreclosure action to the District Court, which in turn, referred the foreclosure suit to this Court, no doubt because one of the defendants named in the foreclosure action is the Debtor currently seeking relief in this Court under Chapter 11 of the Bankruptcy Code.

It should be noted at the outset that the present controversy is not between the District and the Debtor at all which, of course, would ordinarily be the underlying basis for this Court's competence to consider the matter. The controversy is between the District and the FDIC. Notwithstanding, this Court was confronted with the duty to consider the issues presented by the District and by the FDIC, a situation not uncommon in spite of the restrictive jurisdictional provisions of § 28 U.S.C. 1334. However, since neither of the parties to this controversy challenged this Court's jurisdiction under the Bankruptcy Amendments and Federal Judgeship Act (BAFJA), this Court does have subject matter jurisdiction by consent, a novel concept indeed, introduced by BAFJA. Thus, this Court is constrained to discharge its duty and will consider the matter in controversy.

As noted, the controversy is presented for this Court's consideration by Motions for Summary Judgment filed both by the District and by the FDIC. Both Motions are based on the contention that all material and operative facts are without dispute and each of the moving parties is entitled to judgment as a matter of law. Both the District and the FDIC agree that there are no genuine issues of material facts, however, this is the limit of their agreement

because both parties urge that they are entitled to a judgment as a matter of law.

In support of its Motion, the District advanced the following contentions:

First and foremost, the District contends that under the applicable law, the FDIC has no standing to challenge the validity of the tax lien sought to be foreclosed by the District.

Second, even if the FDIC has standing, it failed to follow the required statutory procedures to challenge the assessment of the tax in question.

Third, this Court lacks jurisdiction under State law to determine the validity of the taxes involved in this controversy, which determination can only be obtained from a circuit court under applicable laws of this State, according to the District.

In support of its Motion, the FDIC contends:

First, the District "commissioners" who purportedly levied the special assessment which created the District's claimed lien were neither elected nor appointed.

Second, the District had no statutory authority to levy or collect special assessments before completing and accepting the improvements contemplated to be financed by the proceeds of the bond issue.

Third, there has been limited, if any "special benefit" to the assessed property and special assessment liens are limited by law to the amount of special benefit conferred on the property subject to the lien.

Fourth, the FDIC is not estopped to challenge the District's claimed lien.

Fifth, the FDIC has standing to challenge the validity of the District's claimed lien.

Sixth, the FDIC is not subject to a lack of consideration defense.

Considering the respective contentions of the parties, it is apparent that the jurisdiction of this Court to consider this controversy on its merits presents a threshold question which must be resolved before the remaining contentions of the parties are considered. Then, assuming that this Court has jurisdiction, the standing of the FDIC to challenge the validity of the tax lien must be found to exist before the remaining contentions of the parties can be considered.

The District did, in an off-handed fashion, touch upon the jurisdictional question but basically focused its attention on its contention that the District is entitled to a Summary Judgment in its favor because the FDIC has no standing to challenge the assessment; that the facts in this record do not warrant a disposition of this controversy in favor of the FDIC as a matter of law; and that the FDIC is estopped, in any event, to challenge the validity of the tax lien sought to be foreclosed by the District.

It should be pointed out at the outset that this Court must find that it has subject matter jurisdiction, even in the absence of a jurisdictional challenge. The source of jurisdiction of this Court is to be found, since the adoption of BAFJA, in 28 U.S.C. § 1334 et seq. and in 28 U.S.C. § 157 et seq., particularly § 157. 28 U.S.C. § 1334(b) grants the district court original, albeit, not exclusive jurisdiction of all civil proceedings "arising under, in, or related to" cases under Title 11. 28 U.S.C. § 157 authorizes the district court to refer all cases under Title 11 and *any and all proceedings arising under, arising in or related to a case under Title 11* to the bankruptcy judge of the district. Subclause (b) of § 157 defines proceedings which are "core" proceedings over which the bankruptcy judge has full jurisdiction if there is full reference pursuant to § 157 of 28 U.S.C.

One of the proceedings specifically designated by § 157(b)(2) is a proceeding to determine the validity, extent and priority of liens. Based on the foregoing, it is clear that this Court has jurisdiction to consider the challenge of the validity of the tax lien sought to be foreclosed by the District, simply because the lien under challenge encumbers property of the estate by virtue of § 541 of the Bankruptcy Code. Unfortunately, this conclusion is still insufficient to permit the consideration of the ultimate merits of the controversy, i.e. the validity

of the tax lien and, in turn, the right of the Debtor to foreclose the mortgage lien of the FDIC on the subject property and because of the unresolved question of the FDIC's standing to challenge a tax lien.

## STANDING OF FDIC

■ The right to challenge the validity of any tax imposed by a taxing authority is governed by specific statutory provision and, in the absence of a specific provision dealing with the subject, by general principles which govern standing. Fla.Stat. § 194.181 (1983) specifically sets forth who may contest taxes on real property.

"(1) The plaintiff in any tax suit shall be the taxpayer contesting the assessment of any tax, the payment of which he is responsible for under the law.... (4) in any suit involving a tax other than an ad valorem tax on property, the tax collector charged under the law with collecting such tax shall be defendant."

Clearly, only the taxpayer/property owner has standing to challenge taxation of his property. *City of Sebring v. Wolf,* 141 So. 736 (Fla.1932).

The Supreme Court of this State had occasion to consider the question of standing in the case of *City of Sebring v. Wolf, supra.* In this case, the tax in question was challenged by an owner of the property who acquired the property after the enactment of the statute which validated void tax certificates. The Supreme Court held that the right to challenge the validity of the statute validating tax certificates was a right personal to the owner of the property and unless the party challenging the tax in question has a cognizable ownership interest in the subject property, the challenge interposed can not be sustained. It is well established law of this State that a mortgagee is a mere holder of a lien and has no ownership interest in the property itself. Fla.Stat. § 697.02 (1983); *Martyn v. First Federal Savings and Loan Association,* 257 So.2d 576 (Fla. 4th DCA 1971).

■ There is nothing in the case of *City of Treasure Island v. Strong,* 215 So.2d 473 (Fla.1968), cited by the FDIC in an attempt to distinguish *City of Sebring, supra,* from the one under consideration, which requires a different conclusion. While it is true that in *Treasure Island* both the owners and the mortgagees challenged the validity of the tax assessed by the City, the case did not deal with the right of the mortgagees to challenge the tax but merely held that the owners waived the defense because they failed to timely object to the assessment.

Since there is a specific statutory provision in this State which governs the right to contest the assessment of any tax, general principles which generally govern standing furnish no assistance to the FDIC.

In light of the foregoing, the fact that a foreclosure by the District may or will adversely affect the mortgage lien of the FDIC is of no consequence. Neither is the fact that the challenge in the instant case is based on the contention that the assessment is not merely voidable but void ab initio. It is still the owner of the property who has standing to challenge the validity of the tax. This conclusion assumes an additional special significance in the present instance. This is so because in this case it is not the Debtor who is challenging the tax in question but a lien claimant and as a general proposition ordinarily this Court should not be involved in the resolution of controversies between non-debtors.

## PROPRIETY OF THE PROCEDURE EMPLOYED BY FDIC TO CHALLENGE THE TAX IN QUESTION

The procedure to challenge taxes in this State is dealt with by § 194.171 of the Fla.Stat. This Statute provides, inter alia, that (1) the action must be brought within 60 days of the date the tax is certified for collection (2) the amount of the tax must be paid and the receipt of the tax collector must be attached to the Complaint and (3) any subsequent taxes in the years following the contested tax must be paid before they become delinquent.

The taxes involved in this controversy were levied by the District in August, 1979.

The tax roll was certified for collection and the taxes in question became a lien on the subject property as of January 1, 1979. The first challenge by the FDIC was presented by its counterclaim filed in the foreclosure action commenced by the District in the state court. The counterclaim was filed against the District and not against the tax collector. § 194.181 Fla. Stat. (1983) provides that any suit contesting the assessment of any tax shall be brought against the tax collector.

Based on the foregoing, it is the considered opinion of this Court that (1) this Court has jurisdiction to consider the matters (2) that FDIC has no standing to challenge the validity of the lien sought to be foreclosed by the District and (3) even if it has standing, it failed to comply with the procedural requirements of the applicable statutes of this State. In light of the foregoing, it is not necessary to consider the basic contentions advanced by the FDIC in its counterclaim, to wit, the invalidity of the tax because they were levied by parties who lacked the power to act because they were neither elected nor appointed to act as commissioner at the time of the levy or that in any event the assessment could have no validity until all the improvements connected with the taxes were accomplished. Neither is it necessary to consider the contention of the District that the FDIC is estopped to challenge the validity and the opposing contention of the FDIC that the FDIC cannot be estopped to challenge the validity of the tax as a matter of law because of its special status granted by an act of Congress which created FDIC.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that the Motion for Summary Judgment filed by the FDIC be, and the same is hereby, denied and its counterclaim challenging the validity of the tax lien sought to be foreclosed by the District is dismissed. It is further

ORDERED, ADJUDGED AND DE-CREED that the Motion for Summary Judgment filed by the District be, and the same is hereby, granted and the tax lien of the District be, and the same is hereby, declared to be superior in rank to the mortgage lien of the FDIC.